ROBERT J. KELLY *v*. UNIVERSITY OF CONNECTICUT HEALTH CENTER
(SC 17884)

*Norcott, Palmer, Vertefeuille, Zarella and Schaller, Js.*

---

Argued October 23, 2008—officially released January 27, 2009

*P. Jo Anne Burgh*, with whom was *Kathleen Morrison Grover*, for the appellant (plaintiff).

*Robert Dennis Silva*, with whom was *Michael G. Rigg*, for the appellee (defendant).

*Opinion*

VERTEFEUILLE, J. The plaintiff, Robert J. Kelly, appeals[1] from the judgment of the trial court granting the motion to dismiss filed by the defendant,[2] the University of Connecticut Health Center. The plaintiff claims that the trial court improperly concluded that: (1) his claim against the state, alleging medical malpractice and lack of informed consent in connection with his surgery for kidney stones and chronic kidney dys-

---

[1] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] The defendant was originally identified only as the University of Connecticut Health Center. The plaintiff subsequently filed a motion to substitute a party pursuant to Practice Book § 9-22, requesting that the court add a reference to the state of Connecticut as the named defendant to more accurately reflect the legal entity against whom the plaintiff served his claims because the University of Connecticut Health Center is an entity operated by the state of Connecticut. See General Statutes § 10a-109c (26). The motion was granted by the trial court. For purposes of convenience, we refer to the University of Connecticut Health Center as the defendant. See, e.g., *Lagassey* v. *State*, 281 Conn. 1, 2 n.3, 914 A.2d 509 (2007).

function, had been presented untimely pursuant to General Statutes § 4-148;[3] and (2) No. 05-4, § 1, of the 2005 Special Acts (S.A. 05-4),[4] enacted to remedy the plaintiff's late notice of his claim in the present action, is unconstitutional as an exclusive public emolument prohibited by article first, § 1, of the Connecticut constitution.[5] We conclude that the trial court properly dismissed the plaintiff's complaint, and, accordingly, we affirm the judgment of the trial court.

The record reveals the following facts and procedural history. In September, 1995, the plaintiff sought medical

[3] General Statutes § 4-148 provides: "(a) Except as provided in subsection (b) of this section, no claim shall be presented under this chapter but within one year after it accrues. Claims for injury to person or damage to property shall be deemed to accrue on the date when the damage or injury is sustained or discovered or in the exercise of reasonable care should have been discovered, provided no claim shall be presented more than three years from the date of the act or event complained of.

"(b) The General Assembly may, by special act, authorize a person to present a claim to the Claims Commissioner after the time limitations set forth in subsection (a) of this section have expired if it deems such authorization to be just and equitable and makes an express finding that such authorization is supported by compelling equitable circumstances and would serve a public purpose. Such finding shall not be subject to review by the Superior Court.

"(c) No claim cognizable by the Claims Commissioner shall be presented against the state except under the provisions of this chapter. Except as provided in section 4-156, no claim once considered by the Claims Commissioner, by the General Assembly or in a judicial proceeding shall again be presented against the state in any manner."

[4] Number 05-4, § 1 (a), of the 2005 Special Acts provides in relevant part: "Notwithstanding the failure to file a proper notice of a claim against the state with the clerk of the Office of the Claims Commissioner . . . within the time limitations specified by subsection (a) of section 4-148 of the general statutes . . . Robert J. Kelly is authorized . . . to present his claim against the state to the Claims Commissioner. The General Assembly deems such authorization to be just and equitable and finds that such authorization is supported by compelling equitable circumstances and would serve a public purpose."

[5] Article first, § 1, of the constitution of Connecticut provides: "All men when they form a social compact, are equal in rights; and no man or set of men are entitled to exclusive public emoluments or privileges from the community."

treatment from Peter Albertsen,[6] a physician employed by the defendant, complaining of pain and discomfort associated with a history of kidney stone disease and chronic kidney function problems. Albertsen conducted an evaluation of the plaintiff and advised him that he had kidney stones, recommending that the plaintiff undergo a series of surgical procedures, including a laser lithotripsy,[7] to treat the condition. On October 24, 1995, the plaintiff underwent surgery at the defendant's facility under the attention of the defendant's agents and employees, including Albertsen. The plaintiff was informed that the surgery was successful. Following the surgery, the plaintiff began to notice blood in his urine, which he reported to Albertsen. As a result of this complaint and after further evaluation by Albertsen in an effort to detect the cause of the bloody urine, on February 5, 1996, the plaintiff underwent a cystoscopy, a surgical procedure that examines the interior of the bladder. See Stedman's Medical Dictionary (28th Ed. 2006). As a result of that procedure, Albertsen was able to rule out bladder cancer as the cause of the plaintiff's bloody urine. Between 1996 and 2000, the plaintiff continued to experience episodes of bloody urine and sought further diagnosis by the defendant, although one was never made.

On May 23, 2000, the plaintiff underwent another cystoscopy, which was performed by Albertsen at the defendant's facility. On that same day, Albertsen informed the plaintiff for the first time that he detected

---

[6] The plaintiff also filed a separate malpractice action against Albertsen, which was dismissed for lack of subject matter jurisdiction. See *Kelly* v. *Albertsen*, Superior Court, judicial district of Hartford at Hartford, Docket No. CV 02 0816445 (April 27, 2007).

[7] A lithotripsy is a procedure that crushes a stone in the ureter or bladder using mechanical force or a laser. Stedman's Medical Dictionary (28th Ed. 2006). This procedure requires that during surgery, the laser fibers be placed immediately adjacent to the ureteral or kidney stone, in order to fracture the stone.

some type of "foreign body" in the plaintiff's left ureter, which Albertsen initially identified as a plastic sheath. Albertsen recommended additional surgery to diagnose and treat the condition. In June, 2000, the plaintiff consulted with two additional physicians from a different medical facility for evaluation and treatment of the foreign body. On July 20, 2000, the plaintiff underwent surgery at Hartford Hospital for removal of the plastic sheath, which later was identified as laser fibers. The plaintiff ultimately underwent four additional surgical procedures in order to remove the laser fibers and treat his condition, the last of which occurred on December 14, 2000.

On January 3, 2002, the plaintiff filed a notice of claim with the state claims commissioner, requesting permission to bring an action against the defendant. The defendant filed a motion to dismiss the notice on the ground that the claims commissioner lacked subject matter jurisdiction because the claim was untimely filed. The claims commissioner granted the defendant's motion, finding that the claim was untimely under § 4-148 (a). The plaintiff then sought permission from the General Assembly pursuant to § 4-148 (b) to resubmit his notice of claim despite his untimely filing. See footnote 3 of this opinion. The General Assembly then enacted S.A. 05-4, authorizing the plaintiff to file a late claim. Thereafter, the claims commissioner issued a finding and order permitting the plaintiff to pursue the action against the defendant. The plaintiff subsequently brought the action underlying this appeal in the Superior Court in August, 2005. The defendant filed a motion to dismiss the complaint for lack of subject matter jurisdiction, challenging, inter alia, the constitutionality of S.A. 05-4 as an exclusive emolument for the benefit of the plaintiff. The trial court granted the motion to dismiss, concluding that S.A. 05-4 was unconstitutional, and this appeal followed.

I

The plaintiff first claims that the trial court improperly determined that his initial claim with the claims commissioner in 2002 had been untimely presented under the one year limitation period imposed by § 4-148 (a). Specifically, the plaintiff asserts that the trial court improperly determined that actionable harm, for the purpose of establishing when the limitation period under § 4-148 (a) began to run, occurred when the plaintiff learned of the presence of the laser fibers in his ureter in July, 2000. The plaintiff claims, instead, that actionable harm did not occur until September, 2001, when the plaintiff discovered the causal connection between the defendant's negligent treatment of the plaintiff and the presence of the fibers in the plaintiff's ureter.

In response, the defendant contends that the trial court properly determined that actionable harm occurred no later than sometime in 2000 when the plaintiff learned of the presence of the laser fibers in his ureter. The defendant claims, in particular, that actionable harm does not require full manifestation of that harm as alleged by the plaintiff. Instead, the defendant asserts that when the plaintiff discovered the presence of the fibers, the one year limitation period for a claim of medical malpractice against the defendant began to run. We agree with the defendant.

The following undisputed additional facts and procedural history are relevant to our resolution of this claim. On September 24, 2001, the plaintiff received a written opinion from a medical expert who, after reviewing the pertinent medical records, opined that the October 24, 1995 lithotripsy was performed negligently and that the injuries the plaintiff had sustained were the direct result of the negligent care of Albertsen as well as the defendant's other agents, servants and employees. The plain-

tiff filed a claim with the claims commissioner on January 3, 2002, approximately three months after receiving this written expert opinion.

We begin with the appropriate standard of review. It is well established that "the state cannot be sued without its consent." (Internal quotation marks omitted.) *Lagassey* v. *State*, 268 Conn. 723, 732, 846 A.2d 831 (2004), quoting *Horton* v. *Meskill*, 172 Conn. 615, 623, 376 A.2d 359 (1977). This doctrine of sovereign immunity "implicates subject matter jurisdiction and is therefore a basis for granting a motion to dismiss." *Lagassey* v. *State*, supra, 736. "A determination regarding a trial court's subject matter jurisdiction is a question of law. When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) Id., 737, quoting *Miller* v. *Egan*, 265 Conn. 301, 313, 828 A.2d 549 (2003). Moreover, "[a]s we must in reviewing a motion to dismiss, we take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." (Internal quotation marks omitted.) *Miller* v. *Egan*, supra, 305, quoting *Brookridge District Assn.* v. *Planning & Zoning Commission*, 259 Conn. 607, 611, 793 A.2d 215 (2002).

We note at the outset of our analysis that the plaintiff's claim against the defendant in the present case is governed by § 4-148. See footnote 3 of this opinion. Under this statute, "no claim shall be presented under [chapter 53, governing claims against the state] but within one year after it accrues." General Statutes § 4-148 (a). "In this regard, claims for personal injury are considered 'to accrue on the date when the damage or injury is sustained or discovered or in the exercise of reasonable care should have been discovered . . . .' "

*Lagassey* v. *State*, supra, 268 Conn. 733, quoting General Statutes § 4-148 (a). It is important, then, that we begin by addressing the legal standard by which to determine what constitutes the accrual of an injury for the purpose of establishing when the limitation period under § 4-148 began to run.

The issue of timeliness before us today is not one of first impression. Indeed, this court's recent opinion in *Lagassey* guides our resolution of the plaintiff's first claim in the present appeal. In *Lagassey* v. *State*, supra, 268 Conn. 728–29, this court was faced with a nearly identical challenge to the timeliness of a claim of medical malpractice against the state under § 4-148 (a). The plaintiff, who was the executrix of the estate of her late husband, pursued a claim of medical malpractice on behalf of the estate against the state for alleged negligence in its treatment of the decedent in connection with an abdominal aortic aneurism. Id., 728. The state moved to dismiss the claim as untimely, in accordance with the one year limitation period set forth in § 4-148 (a), and the trial court granted that motion. Id.

On appeal, this court addressed the time when an injury accrues under, and thus triggers the start of, the limitation period set forth in § 4-148 (a). After a thorough review of the relevant case law regarding § 4-148 (a), this court articulated the standard for determining when an injury accrues. "The limitation period for actions in negligence begins to run on the date when the injury is first discovered or in the exercise of reasonable care should have been discovered. . . . In this regard, the term injury is synonymous with legal injury or actionable harm. Actionable harm occurs when the plaintiff discovers, or in the exercise of reasonable care, should have discovered the essential elements of a cause of action. . . . A breach of duty by the defendant and a causal connection between the defendant's breach of duty and the resulting harm to the plaintiff

are essential elements of a cause of action in negligence; they are therefore necessary ingredients for actionable harm." (Citations omitted; internal quotation marks omitted.) Id., 748–49.

"Furthermore, actionable harm may occur when the plaintiff has knowledge of facts that would put a reasonable person on notice of the nature and extent of an injury, and that the injury was caused by the negligent conduct of another. . . . In this regard, *the harm complained of need not have reached its fullest manifestation in order for the limitation period to begin to run*; a party need only have suffered some form of actionable harm." (Citation omitted; emphasis added; internal quotation marks omitted.) Id., 749; *Barrett* v. *Montesano*, 269 Conn. 787, 793, 849 A.2d 839 (2004) (same); *Burns* v. *Hartford Hospital*, 192 Conn. 451, 460, 472 A.2d 1257 (1984) ("[t]he harm need not have reached its fullest manifestation before the statute begins to run").

Under this governing principle, the plaintiff's knowledge of injury may constitute actionable harm despite the absence of an expert medical opinion. See *Barnes* v. *Schlein*, 192 Conn. 732, 737–38 n.7, 473 A.2d 1221 (1984) ("[a]lthough an expert opinion may lead to discovery of an actionable harm . . . it does not follow that a plaintiff cannot reasonably discover an injury absent verification by a qualified expert" [citation omitted; internal quotation marks omitted]). This is especially so with regard to the plaintiff's learning of the presence of a foreign object in his or her body after undergoing a surgical procedure. Such a presence indicates "professional negligence . . . so gross as to be clear even to a lay person." *Boone* v. *William W. Backus Hospital*, 272 Conn. 551, 567, 864 A.2d 1 (2005); see also *Puro* v. *Henry*, 188 Conn. 301, 308, 449 A.2d 176 (1982) (needle found in patient after hernia surgery); *Console* v. *Nickou*, 156 Conn. 268, 275, 240 A.2d 895 (1968) (needle left in patient after delivery of child);

*Slimak* v. *Foster*, 106 Conn. 366, 371, 138 A. 153 (1927) (piece of surgical instrument left in patient after nasal surgery).

With these principles in mind, we conclude that the trial court properly determined that the plaintiff's initial claim with the claims commissioner was untimely under § 4-148 (a). The plaintiff was first informed of the presence of some type of foreign object in his left ureter on May 23, 2000, and received further treatment for the condition in June, 2000. On July 20, 2000, the plaintiff underwent his first surgery to remove the foreign object, which was identified as laser fibers. He subsequently underwent four additional surgical procedures during 2000 to remove the fibers. The record thus supports the trial court's determination that "no later than sometime in 2000, the plaintiff learned about the presence of . . . laser fibers in his left ureter," and that the filing of his notice of claim in January, 2002, therefore was untimely.

The plaintiff claims that in cases involving the discovery of the presence of foreign objects in a plaintiff's body, actionable harm occurs only after the plaintiff obtains an expert opinion that malpractice occurred. We disagree. The discovery of the presence of a foreign object in the body of a person who recently has undergone a medical procedure presupposes discovery of the "essential elements of a cause of action in negligence," as required by the standard this court articulated in *Lagassey* v. *State*, supra, 268 Conn. 748. Thus, when the plaintiff discovered the presence of the laser fibers sometime in 2000, he became aware of actionable harm within the meaning of § 4-148 and the one year limitation period began to run. When the plaintiff thereafter filed his notice of claim on January 3, 2002, it was well beyond the one year limitation period. We conclude that the trial court, after conducting a thorough review of the record before it, properly determined that the

plaintiff untimely filed his initial claim against the defendant.

## II

The plaintiff next claims that the trial court improperly concluded that S.A. 05-4 violates our state constitution because it is an exclusive public emolument in that it does not serve a public purpose. More specifically, the plaintiff contends that S.A. 05-4 furthers a public purpose because it lengthens the limitation period within which a medical malpractice action can be brought against the defendant, a state hospital, to be more consistent with the limitation period within which malpractice actions against other short-term acute care hospitals may be brought. The plaintiff claims that S.A. 05-4 attempts to remedy the injustice created by the establishment of two different statutes of limitation, a shorter one for medical malpractice claims against the defendant, and a longer one for such claims against private hospitals.

In response, the defendant asserts that the trial court properly determined that S.A. 05-4 serves no public purpose, because it singles out the plaintiff alone for special, preferential treatment. The defendant claims that S.A. 05-4 neither excuses nor provides circumstances under which persons other than the plaintiff may be excused from compliance with the one year limitation period. We agree with the defendant, and therefore conclude that the trial court properly determined that S.A. 05-4 was unconstitutional.

Initially, we address the applicable standard of review and governing legal principles. As we noted earlier, "[a] determination regarding a trial court's subject matter jurisdiction is a question of law. When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that

appear in the record." (Internal quotation marks omitted.) *Lagassey* v. *State*, supra, 268 Conn. 737. Moreover, "[t]his court has long held that every presumption will be made in favor of the constitutionality of a legislative act. . . . Parties challenging the constitutionality of an act in a proceeding seeking declaratory relief have the burden of showing its invalidity beyond a reasonable doubt." (Citation omitted.) *Wilson* v. *Connecticut Product Development Corp.*, 167 Conn. 111, 114, 355 A.2d 72 (1974).

We recently addressed a similar claim of exclusive public emolument in *Kinney* v. *State*, 285 Conn. 700, 707, 941 A.2d 907 (2008), in which we addressed the constitutionality of a special act passed by the legislature for the benefit of a plaintiff who had filed untimely a negligence claim against the state. We reviewed the trial court's decision to grant the state's motion for summary judgment because the special act at issue, which specifically allowed the plaintiff to pursue a claim against the state despite her untimely filing, did not serve a public purpose and thus "ran afoul of article first, § 1" of the state constitution. Id., 708. We concluded that "although well intentioned, [the special act] benefits no member of the public other than the plaintiff and remedies a procedural default arising from the plaintiff's failure to file a claim with the claims commissioner within [the applicable statute of limitations] . . . ." Id., 708–709.

We are mindful of the heavy burden assumed by those who challenge the constitutionality of a special act, and find our discussion in *Kinney* of the legal principles which govern this high standard to be both useful and instructive in the present case. "To prevail under article first, § 1, of our constitution, the state must demonstrate that the sole objective of the General Assembly is to grant personal gain or advantage to an individual. . . . If, however, an enactment serves a legitimate *public*

purpose, then it will withstand a challenge under article first, § 1." (Emphasis added; internal quotation marks omitted.) Id., 709–10, quoting *Chotkowski* v. *State*, 240 Conn. 246, 257, 690 A.2d 368 (1997).

"The scope of our review as to whether an enactment serves a public purpose is limited. [W]hat constitutes a public purpose is primarily a question for the legislature, and its determination should not be reversed by the court unless it is manifestly and palpably incorrect. . . . In determining whether a special act serves a public purpose, a court must uphold it unless there is no reasonable ground upon which it can be sustained. . . . Thus, if there be the least possibility that [the special act] will be promotive in any degree of the public welfare . . . we are bound to uphold it against a constitutional challenge predicated on article first, § 1 [of the state constitution]. . . .

"In this regard, although a special act passed under § 4-148 (b) will undoubtedly confer a direct benefit upon a particular claimant, we have found a public purpose if it remedies an injustice done to that individual *for which the state itself bears responsibility*. . . . In such circumstances, the benefit conferred upon a private party by the legislature may be viewed as incidental to the overarching public interest that is served in remedying an injustice caused by the state. . . .

"By contrast, we have consistently held that legislation seeking to remedy a procedural default for which the state is not responsible does not serve a public purpose and, accordingly, runs afoul of article first, § 1, of the state constitution. See, e.g., *Merly* v. *State*, [211 Conn. 199, 212–13, 558 A.2d 977 (1989)] . . . . Thus, legislation cannot survive a constitutional challenge under article first, § 1, if it excuses a party's failure to comply with a statutory notice requirement simply because the noncompliance precludes consideration of

the merits of the party's claim. . . . Similarly, where a special act has allowed a person named therein to bring a suit based upon a statutory cause of action that would otherwise be barred for failure to comply with a time limit specified in the statute, we have ordinarily been unable to discern any public purpose sufficient to sustain the enactment." (Citations omitted; emphasis added; internal quotation marks omitted.) *Kinney* v. *State*, supra, 285 Conn. 710–11; see also *Vecchio* v. *Sewer Authority*, 176 Conn. 497, 503–507, 408 A.2d 254 (1979) (special act validating appeal from sewer assessment commenced after expiration of time for taking such appeal held unconstitutional); *Hillier* v. *East Hartford*, 167 Conn. 100, 107–109, 355 A.2d 1 (1974) (special act validating notice of sidewalk defect given to municipality after time allowed held unconstitutional).

Applying these legal principles to the present case, we conclude that the trial court properly determined that S.A. 05-4 is an unconstitutional public emolument because it serves no public purpose. Special Act 05-4 specifically authorizes the plaintiff, and only the plaintiff, to present his claim against the state to the claims commissioner despite his initial untimely filing. See footnote 4 of this opinion. A review of the history surrounding the enactment of S.A. 05-4 shows that those in favor of adopting the act believed that "what [they were] doing . . . [was] changing the rules for one individual in a specific act." 48 H.R. Proc., Pt. 13, 2005 Sess., p. 3750, remarks of Representative Reginald Beamon. As another representative stated, "all we're doing is giving somebody the right to pursue a claim." Id., p. 3748, remarks of Representative Robert Farr. As this legislative history demonstrates, S.A. 05-4 clearly was enacted for the purpose of affording only the plaintiff the right to pursue his claim against the defendant.

Moreover, as we recognized in *Kinney*, a mere declaration within a particular special act that it serves the

public interest is not enough. "[T]he fact that the legislature stated that the special act served a public purpose does not change the pertinent inquiry for the court." *Kinney* v. *State*, supra, 285 Conn. 712. Indeed, "[t]he legislature cannot by mere fiat or finding, make public a truly private purpose." (Internal quotation marks omitted.) Id.

We also reject the plaintiff's contention that S.A. 05-4 remedies an injustice done to the plaintiff for which the defendant is responsible. The plaintiff claims that the defendant's continued postoperative reassurances unjustly prevented him from bringing a timely claim against the state. Any such reassurances, however, do not amount to the kind of *procedural* default for which the state can be held responsible. There is simply nothing in the record that indicates that the defendant committed any procedural mistake that contributed to the plaintiff's failure to file his claim with the claims commissioner within the one year limitation period.

"No enactment creating a preference can withstand constitutional attack if the sole objective of the General Assembly is to grant personal gain or advantage to an individual." *State ex rel. Higgins* v. *Civil Service Commission*, 139 Conn. 102, 106, 90 A.2d 862 (1952). Special Act 05-4 grants to the plaintiff alone a personal right not generally available to others similarly situated, and serves no public purpose. Accordingly, because "we see no basis for sustaining the validity of a special act creating a privilege for a particular individual"; *Kinney* v. *State*, supra, 285 Conn. 713; and because it is clear that S.A. 05-4 confers an exclusive public emolument on the plaintiff, we conclude that the trial court properly determined that S.A. 05-4 violates article first, § 1, of the state constitution.

The judgment is affirmed.

In this opinion the other justices concurred.