******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

*Syllabus*

The plaintiff state of Connecticut sought a judgment declaring that certain
legislation (2017 Special Acts, No. 17-4), which authorized the defendants
to proceed before the Claims Commissioner on their claim, previously
filed in 2007 and that had been dismissed as untimely and barred on
sovereign immunity grounds, constituted an unconstitutional public
emolument in violation of article first, § 1, of the Connecticut constitu-
tion. In 2007, the defendants, a mother and her two sons, filed a notice
of claim with the Claims Commissioner, seeking to recover damages
from the state for the alleged violation of their federal and state constitu-
tional rights to a free public education for the two sons in a safe school
setting. The Claims Commissioner dismissed the claim for lack of subject
matter jurisdiction on the ground that the claim addressed matters
occurring more than one year prior to the date of the filing and, therefore,
was filed outside of the statutorily (§ 4-148 (a)) prescribed one year
time limit. The defendants sought review from the legislature pursuant
to statute (§ 4-158 (a)), which approved a joint resolution that vacated
the decision of the Claims Commissioner and authorized the defendants
to institute and prosecute an action against the state, and the defendants
subsequently commenced an action thereto. Thereafter, the trial court
granted the state's motion to dismiss, reasoning that the joint resolution
constituted an unconstitutional public emolument in violation of article
first, § 1, of the Connecticut constitution. On appeal, this court affirmed
the judgment of the trial court, holding that the defendants' claim was
time barred by the one year statute of limitations set forth in § 4-148
(a), and that the joint resolution had failed to identify any compelling
equitable circumstances or public purpose served by permitting the
defendants to bring an untimely claim against the state. In 2013, the
defendants filed a second claim with the Claims Commissioner, alleging
that they were harmed by the General Assembly's failure to articulate
a public purpose in the joint resolution and sought to revive their 2007
schools claim and damages and other relief from the state for its subse-
quent negligence in failing to articulate a public purpose in the joint
resolution (legislative negligence claim). The Claims Commissioner
granted the state's motion to dismiss. The defendants again sought
review from the legislature, which approved the special act that author-
ized the defendants to present their claims to the Claims Commissioner
for injuries alleged to have accrued in 2006, reviving the defendants'
2007 schools claim. The state then instituted the declaratory judgment
action. The defendants filed a counterclaim, alleging that the state's
action violated their due process rights. The state moved to dismiss the
defendants' counterclaim on the ground that it was barred by sovereign
immunity. The state filed a motion for summary judgment, claiming that
the special act constituted an unconstitutional public emolument, and
that the defendants were collaterally estopped from arguing that their
claims were timely or that there was a legitimate public purpose for
permitting their untimely claims to proceed. The trial court granted the
state's motions for summary judgment and to dismiss the defendants'
counterclaim. On the defendants' appeal to this court, *held*:

1. The trial court properly granted the state's motion for summary judgment:
   a. The trial court properly determined that the special act constituted a
   public emolument in violation of article first, § 1, of the Connecticut
   constitution as the defendants' schools claim was untimely filed outside
   of the prescribed one year time limit under § 4-148 (a), the claim could
   proceed only pursuant to valid special legislation that expressly identified
   a legitimate public purpose, and the special act did not serve a public
   purpose because it remedied a procedural default for which the defen-
   dants bore responsibility and authorized only the defendants to com-
   mence an action against the state for their alleged injuries, providing

the defendants with an exclusive and private benefit, not generally available to the public; moreover, because the legislative negligence claim was brought within one year of the alleged injury accruing and, therefore, was timely filed, the proper statutory mechanisms to authorize the claim to proceed before the Claims Commissioner were §§ 4-158 (b) and the statute (§ 4-159 (b)) authorizing the legislature to vacate and remand a decision of the Claims Commissioner but those statutes were not referenced in the special act; furthermore, the special act exclusively referred to dates and injuries relevant to the schools claim and failed to reference the legislature's failure to articulate a public purpose in the joint resolution or correctly remand the schools claim to proceed before the Claims Commissioner, and, therefore, the plain text of the special act failed to indicate that the legislature intended to authorize the legislative negligence claim to proceed before the Claims Commissioner.

b. The defendants could not prevail on their claim that, in reviewing and remanding their schools claim pursuant to §§ 4-158, 4-159, and the applicable statute (§ 4-160) regarding waiver of immunity from liability, the General Assembly automatically and necessarily waived sovereign immunity as to their legislative negligence claim: to overcome the presumption of sovereign immunity, the defendants were required to show that the legislature, either expressly or by force of a necessary implication, statutorily waived the state's sovereign immunity, and, although the defendants sought legislative authorization to recover for the legislature's alleged negligence, the General Assembly's only action in response thereto was to enact the special act, which authorized the defendants to proceed before the Claims Commissioner on the schools claim; moreover, there was no indication that the legislature intended for the defendants to recover against the legislature for its own alleged negligence as the special act was silent as to the defendants' legislative negligence claim and there was no separate directive that remanded the legislative negligence claim to the Claims Commissioner or waived immunity to that claim.

2. The trial court properly dismissed the defendants' counterclaim on the ground that it was barred by sovereign immunity: the defendants' interpretation that, pursuant to § 4-160 (c), the General Assembly waived sovereign immunity for the defendants' counterclaim when the legislature remanded the schools claim to proceed before the Claims Commissioner was incorrect, as the waiver of § 4-160 (c) applied only to actions for money damages that the General Assembly had authorized against the state or claims that the General Assembly had remanded to the Claims Commissioner for further proceedings pursuant to § 4-159 and does not apply to separate declaratory judgment actions brought by the state challenging the constitutionality of special legislation; moreover, without a statutory waiver of sovereign immunity, the defendants could recover for money damages on their counterclaim only if they presented their counterclaim before the Claims Commissioner, and, because the defendants did not do so, their counterclaim could not proceed.

Argued January 11—officially released May 10, 2022

*Procedural History*

Action for judgment declaring unconstitutional a special act of the legislature that permitted the refiling of a certain claim by the defendants that previously had been dismissed, and for other relief, brought to the Superior Court in the judicial district of Hartford, where the defendants filed a counterclaim; thereafter, the court, *Hon. Robert B. Shapiro*, judge trial referee, granted the plaintiff's motions for summary judgment and to dismiss the defendants' counterclaim and rendered judgment thereon, from which the defendants appealed to this court. *Affirmed.*

*Deborah G. Stevenson*, assigned counsel, for the appellants (defendants).

*Michael K. Skold*, assistant attorney general, with whom, on the brief, were *William Tong*, attorney gen-

eral, and *Clare Kindall*, solicitor general, for the appel-
lee (plaintiff).

*Opinion*

CRADLE, J. This appeal arises out of a long-standing dispute among the defendants, Joanne Avoletta, Peter Avoletta, and Matthew Avoletta,[1] and the plaintiff, the state of Connecticut, concerning the state's alleged failure to provide Peter Avoletta and Matthew Avoletta with a free public education in a safe setting. The defendants appeal from the summary judgment rendered by the trial court in favor of the state and from the judgment of dismissal of their counterclaim. As to the summary judgment, the defendants claim that the court improperly concluded that the special act authorizing their first claim to proceed before the Claims Commissioner (commissioner) constituted an unconstitutional public emolument in violation of article first, § 1, of the Connecticut constitution, and the General Assembly did not automatically waive the state's sovereign immunity as to the defendants' second claim by remanding their claim to the commissioner. As to the dismissal of the counterclaim, the defendants claim that the court erred in determining that their counterclaim was barred by sovereign immunity. We affirm the judgment of the trial court.

The record before the court, viewed in the light most favorable to the defendants as the nonmoving party, reveals the following relevant facts and procedural history. On May 2, 2007, the defendants filed a claim with the commissioner alleging that the state failed to maintain the Torrington public schools in a safe and sanitary condition (2007 claim). Specifically, the defendants alleged that the middle and high school buildings contained water leaks, bacteria, mold, dampness, and poor indoor air quality, which caused and exacerbated Peter Avoletta's and Matthew Avoletta's respiratory diseases and conditions.[2] As a result of the poor building conditions, Joanne Avoletta enrolled Peter Avoletta and Matthew Avoletta in private schools and filed a claim with the commissioner seeking reimbursement from the state for the tuition and costs of their private education. Because the defendants' claim was not timely filed within the one year statute of limitations set forth in General Statutes § 4-148 (a),[3] the commissioner dismissed the claim for lack of subject matter jurisdiction.

The defendants subsequently sought legislative review of the commissioner's decision pursuant to § 4-148 (b).[4] In response, the General Assembly passed Substitute House Joint Resolution No. 11-34[5] (joint resolution), which vacated the commissioner's ruling and authorized the defendants to file a damages claim against the state in the Superior Court. Pursuant to the joint resolution, the defendants commenced an action against the state on May 14, 2012. See *Avoletta* v. *State*, Docket No. CV-12-5036221-S, 2013 WL 2350751 (Conn. Super. May 6, 2013) (*Avoletta I*). The state subsequently filed a motion to dismiss. Id., *1.

The court, *Sheridan*, *J.*, granted the state's motion to dismiss on the ground that the joint resolution was an unconstitutional public emolument in violation of article first, § 1, of the Connecticut constitution. Id., *9. The court found that the defendants' claim was untimely, noting that the defendants "were clearly aware of the school conditions far more than a year before the May 2, 2007 filing with the . . . commissioner." Id., *7. Accordingly, the court held that allowing the defendants "to file suit directly in this matter, when this court has determined that their action was untimely provides them a right unavailable to other parties. While the legislature need not enact a special act when vacating the . . . commissioner's dismissal of the matter, allowing a plaintiff with an untimely claim to circumvent § 4-148 (b) without any explanation or public purpose, constitutes a public emolument when the action is untimely." Id., *9. Thereafter, the defendants appealed to this court. See *Avoletta* v. *State*, 152 Conn. App. 177, 98 A.3d 839, cert. denied, 314 Conn. 944, 102 A.3d 1116 (2014) (*Avoletta II*).

In *Avoletta II*, this court affirmed the judgment of the trial court, holding that the defendants' claim was time barred by the one year statute of limitations set forth in § 4-148 (a), and that the joint resolution had failed to identify any compelling equitable circumstances or a public purpose served by permitting the defendants to bring an untimely claim against the state. Id., 192–95; see also General Statutes § 4-148 (b). Relying on *Morneau* v. *State*, 150 Conn. App. 237, 260–62, 90 A.3d 1003, cert. denied, 312 Conn. 926, 95 A.3d 522 (2014), this court determined that the joint resolution granted the defendants an exclusive and private benefit unavailable to the general public. *Avoletta II*, supra, 152 Conn. App. 192–95. The court proceeded to clarify that special legislation passed pursuant to § 4-148 (b), which seeks only to remedy a procedural default, such as failure to comply with a statute of limitations, will be upheld only in situations where the "state itself bears responsibility" for the procedural default. (Emphasis omitted.) Id., 194–95. Accordingly, this court held that the joint resolution was an unconstitutional public emolument. Id., 195.

On August 28, 2013, the defendants filed a second claim with the commissioner (2013 claim), seeking relief on two distinct grounds. First, the defendants sought to revive their 2007 claim for damages stemming from unsafe conditions at the Torrington public schools (Torrington schools claim). Second, the defendants alleged that they were harmed by the legislature's "gross negligence" in failing to articulate a public purpose in the joint resolution and neglecting to appropriately follow the statutory procedure to authorize such a claim (legislative negligence claim). The state moved to dismiss both claims, arguing that the defendants' claims

were barred by res judicata, collateral estoppel, and legislative immunity. The commissioner granted the state's motion to dismiss on May 1, 2015.

Following the commissioner's order, the defendants again appealed to the General Assembly for legislative review. On June 13, 2017, the General Assembly passed No. 17-4 of the 2017 Special Acts (special act), authorizing the defendants to proceed before the commissioner "for injuries . . . alleged to have accrued on September 15, 2006 . . . ."[6] The commissioner subsequently issued a scheduling order requiring that the parties engage in discovery, file dispositive motions, and participate in a hearing on the merits of the defendants' claims.

On September 15, 2017, the state instituted the present action by filing a declaratory judgment action with the Superior Court, seeking a determination that the special act constituted an unconstitutional public emolument in violation of article first, § 1, of the Connecticut constitution.[7] The defendants subsequently filed a motion to dismiss on several grounds,[8] each of which was rejected by the court, *Robaina*, *J.*, and the motion was denied. The defendants then filed a motion to strike the complaint, which the court, *Dubay*, *J.*, denied.

On May 11, 2018, the state filed a motion for summary judgment. In its accompanying memorandum of law, the state claimed that (1) the special act constituted an unconstitutional public emolument and (2) the defendants were collaterally estopped from arguing that their claims were timely or that there was a legitimate public purpose for permitting their untimely claims to proceed.

The defendants subsequently filed an opposition, in which they distinguished and clarified the claims they had brought before the commissioner. With regard to the Torrington schools claim, the defendants argued that the state was responsible for their failure to comply with the one year statute of limitations set forth in § 4-148 (a). Specifically, the defendants contended that they had detrimentally relied on promises from state actors and, in particular, a directive from the attorney general to the Commissioner of Education to compel the Torrington school district to abide by state law. The defendants also claimed that the special act served a legitimate public purpose, namely to encourage accountability in state government through the full adjudication of cases involving persons who claim to have been injured by the conduct of state actors. As to the legislative negligence claim, the defendants clarified that they were harmed by the legislature's failure to articulate a public purpose in the joint resolution, which caused the dismissal of the 2007 claim, rather than the state's alleged failure to maintain the Torrington schools in a safe condition. They also contended that the legislative negligence claim was timely filed with the commis-

sioner.

On July 27, 2018, the state submitted a reply brief in further support of its motion for summary judgment, wherein it argued, inter alia, that the plain language of the special act only attempted to revive the Torrington schools claim and, therefore, did not authorize the legislative negligence claim to proceed before the commissioner. Accordingly, the state contended that the legislative negligence claim was barred by res judicata, collateral estoppel, and legislative immunity.

On November 8, 2018, during the pendency of the state's motion for summary judgment, the defendants filed their answer, which included various special defenses and a counterclaim. The counterclaim alleged, inter alia, that the state's conduct in bringing the declaratory judgment action violated the defendants' due process rights under article first, § 1, of the Connecticut constitution.[9] The defendants sought relief in the form of (1) a dismissal of the declaratory judgment action; (2) a declaration that the state violated the defendants' due process rights in bringing the action, that the legislature prejudiced the defendants by failing to articulate a public policy in the joint resolution, and that the 2013 claim was free to proceed before the commissioner; and (3) "legal, equitable, compensatory, nominative, actual, and/ or punitive monetary damages, including but not limited to attorney's fees, interest, and costs . . . ." The state moved to dismiss the counterclaim on the ground that it was barred by sovereign immunity.

On October 16, 2019, the court, *Hon. Robert B. Shapiro*, judge trial referee, heard argument on the state's motion for summary judgment and on its motion to dismiss the defendants' counterclaim. On January 14, 2020, the court granted the state's motion for summary judgment. In its memorandum of decision, the court addressed both the Torrington schools claim and the legislative negligence claim. Regarding the former, the court held that the issue of whether the Torrington schools claim was timely filed was barred by the doctrine of collateral estoppel. Because the claim previously was held untimely, the court clarified that the claim could only proceed via special legislation passed pursuant to § 4-148 (b). The court then proceeded to analyze the constitutionality of the special act in light of our emoluments clause jurisprudence and determined that the defendants had failed to demonstrate a genuine issue of material fact that the special act served a legitimate public purpose. Accordingly, the court concluded that the special act constituted an unconstitutional public emolument.

As to the legislative negligence claim, the court found that the claim was timely filed in accordance with § 4-148 (a). The court held, however, that neither the plain text nor the legislative history of the special act indicated that the General Assembly intended for the defen-

dants to proceed on the legislative negligence claim. Rather, the special act only authorized the defendants to proceed before the commissioner on the untimely Torrington schools claim. Consequently, the court determined that the legislative negligence claim was barred by sovereign immunity.

On that same day, the court also granted the state's motion to dismiss the defendants' counterclaim. In its memorandum of decision, the court held that (1) the legislature, through the special act, did not statutorily waive the state's sovereign immunity with regard to the counterclaim; (2) the defendants failed to allege a constitutionally protected interest; and (3) the attorney general did not exceed his statutory authority in bringing the declaratory judgment action against the defendants. The court concluded, therefore, that the defendants' counterclaim was barred by sovereign immunity. This appeal followed.

I

The defendants first claim that the court erred in rendering summary judgment in favor of the state on the grounds that (1) the special act authorizing the Torrington schools claim was an unconstitutional public emolument and (2) the legislative negligence claim, which was not authorized by the plain language of the special act, was barred by sovereign immunity. With regard to the Torrington schools claim, the defendants contend that a genuine issue of material fact exists as to whether the General Assembly articulated a legitimate public purpose in the language of the special act. As to the legislative negligence claim, the defendants argue that, by reviewing the commissioner's dismissal of their claims, and by remanding the Torrington schools claim to the commissioner through the special act, the General Assembly necessarily waived sovereign immunity as to the legislative negligence claim. We are not persuaded.

We begin by setting forth the appropriate standard of review and relevant legal principles that guide our resolution of this appeal. Our review of a trial court's decision granting a motion for summary judgment is well established. "Practice Book § [17-49] requires that judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A material fact is a fact that will make a difference in the result of the case. . . . The facts at issue are those alleged in the pleadings. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue as to all material facts, which, under applicable principles of substantive law, entitle him to a judgment as a matter of law. . . . The party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine

issue of material fact. See Practice Book §§ [17-44 and 17-45]. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The test is whether a party would be entitled to a directed verdict on the same facts. . . . Our review of the trial court's decision to grant a motion for summary judgment is plenary." (Internal quotation marks omitted.) *Pascola-Milton* v. *Millard*, 203 Conn. App. 172, 179–80, 247 A.3d 652, cert. denied, 336 Conn. 934, 248 A.3d 710 (2021).

"The principle that the state cannot be sued without its consent, or sovereign immunity, is well established under our case law." (Internal quotation marks omitted.) *DaimlerChrysler Corp.* v. *Law*, 284 Conn. 701, 711, 937 A.2d 675 (2007). "The doctrine of sovereign immunity operates as a strong presumption in favor of the state's immunity from liability or suit. . . . [T]o circumvent the strong presumption of sovereign immunity in [an] action for monetary damages, the burden is on the [claimant] to show that . . . the legislature, either expressly or by force of a necessary implication, statutorily waived the state's sovereign immunity . . . . In the absence of a statutory waiver of sovereign immunity, the [claimant] may not bring an action against the state for monetary damages without authorization from the . . . commissioner to do so. . . .

"When sovereign immunity has not been waived, the . . . commissioner is authorized by statute to hear monetary claims against the state and determine whether the claimant has a cognizable claim. . . . The . . . commissioner, if he [or she] deems it just and equitable, may sanction suit against the state on any claim which, in his [or her] opinion, presents an issue of law or fact under which the state, were it a private person, could be liable." (Citation omitted; internal quotation marks omitted.) *Avoletta II*, supra, 152 Conn. App. 183–84.

"Section 4-148 (a) sets forth the time frame in which a claimant must present a claim to the . . . [c]ommissioner. Specifically, that subsection provides that no claim shall be presented . . . but within one year after it accrues. Claims for injury to person or damage to property shall be deemed to accrue on the date when the damage or injury is sustained or discovered or in the exercise of reasonable care should have been discovered, provided no claim shall be presented more than three years from the date of the act or event complained of. . . .

"[Section 4-148 (b)] provides a legislative exception to the time frame for obtaining a waiver of sovereign immunity. The General Assembly may, by special act, authorize a person to present a claim to the . . . [c]ommissioner after the time limitations set forth in subsection (a) of this section have expired if it deems such authorization to be just and equitable and makes an

express finding that such authorization is supported by compelling equitable circumstances and would serve a public purpose." (Citation omitted; internal quotation marks omitted.) *Morneau* v. *State*, supra, 150 Conn. App. 255. "Although § 4-148 (b) provides that [s]uch finding shall not be subject to review by the Superior Court, special acts passed in this manner are subject to review nonetheless under the public emoluments clause contained in article first, § 1, of the state constitution." (Internal quotation marks omitted.) *Lagassey* v. *State*, 268 Conn. 723, 733, 846 A.2d 831 (2004).

"To prevail under article first, § 1, of our constitution, the state must demonstrate that the sole objective of the General Assembly is to grant personal gain or advantage to an individual. . . . If, however, an enactment serves a legitimate public purpose, then it will withstand a challenge under article first, § 1 . . . . Moreover, we conduct our review of [the special act] mindful that legislative enactments carry with them a strong presumption of constitutionality, and that a party challenging the constitutionality of a validly enacted statute bears the heavy burden of proving the statute unconstitutional beyond a reasonable doubt. . . .

"The scope of our review as to whether an enactment serves a public purpose is limited. [W]hat constitutes a public purpose is primarily a question for the legislature, and its determination should not be reversed by the court unless it is manifestly and palpably incorrect. . . . In determining whether a special act serves a public purpose, a court must uphold it unless there is no reasonable ground upon which it can be sustained. . . . Thus, if there be the least possibility that making the gift will be promotive in any degree of the public welfare . . . we are bound to uphold it against a constitutional challenge predicated on article first, § 1, [of the state constitution]. . . .

"In this regard, although a special act passed under § 4-148 (b) will undoubtedly confer a direct benefit upon a particular claimant, we have found a public purpose if it remedies an injustice done to that individual *for which the state itself bears responsibility*. . . . In such circumstances, the benefit conferred upon a private party by the legislature may be viewed as incidental to the overarching public interest that is served in remedying an injustice caused by the state. . . .

"By contrast, we have consistently held that legislation seeking to remedy a procedural default for which the state is not responsible does not serve a public purpose and, accordingly, runs afoul of article first, § 1, of the state constitution. . . . Thus, legislation cannot survive a constitutional challenge under article first, § 1, if it excuses a party's failure to comply with a statutory notice requirement simply because the noncompliance precludes consideration of the merits of the party's claim. . . . Similarly, where a special act

has allowed a person named therein to bring a suit based upon a statutory cause of action that would otherwise be barred for failure to comply with a time limit specified in the statute, we have ordinarily been unable to discern any public purpose sufficient to sustain the enactment." (Citations omitted; emphasis in original; footnote omitted; internal quotation marks omitted.) *Kinney* v. *State*, 285 Conn. 700, 709–11, 941 A.2d 907 (2008).

## A

On appeal, the parties agree that the Torrington schools claim was not timely filed within the one year limitation period set forth in § 4-148 (a).[10] Thus, the Torrington schools claim can only proceed pursuant to valid special legislation that expressly identifies a legitimate public purpose. See General Statutes § 4-148 (b); *Kinney* v. *State*, supra, 285 Conn. 710. The defendants contend that the plain language of the special act articulates such a purpose and, therefore, authorizes their claim to proceed before the commissioner. In response, the state argues that the special act only remedies a procedural default for which the defendants bear responsibility and, consequently, bestows an exclusive, private benefit on the defendants in violation of article first, § 1, of the Connecticut constitution. We agree with the state.

There is no question that the General Assembly purported to articulate a legitimate public purpose in the plain text of the special act. Indeed, the special act explicitly states that "there is a public purpose served by encouraging accountable state government through the full adjudication of cases involving persons who claim to have been injured by the conduct of state actors" and "[t]he General Assembly deems such authorization [to proceed before the commissioner] . . . just and equitable and finds that such authorization is supported by compelling equitable circumstances and would serve a public purpose." Special Act 2017, No. 17-4, § 1. This language, however, does not end our inquiry. Instead, our Supreme Court has held that "a mere declaration within a particular special act that it serves the public interest is not enough." *Kelly* v. *University of Connecticut Health Center*, 290 Conn. 245, 259–60, 963 A.2d 1 (2009). "The legislature cannot by mere fiat or finding, make public a truly private purpose . . . . Its findings and statements about what is or is not public cannot be binding upon the court. . . . Therefore, the fact that the legislature stated that the special act served a public purpose does not change the pertinent inquiry for the court." (Citations omitted; internal quotation marks omitted.) *Kinney* v. *State*, supra, 285 Conn. 712. Rather, we must determine whether the state conclusively demonstrated that the "sole objective of the General Assembly [was] to grant personal gain or advantage to [the defendants]." (Inter-

nal quotation marks omitted.) Id., 709.

Our resolution of this claim is guided by our Supreme Court's decisions in *Kinney* v. *State*, supra, 285 Conn. 700, and *Kelly* v. *University of Connecticut Health Center*, supra, 290 Conn. 245. In *Kinney*, the court invalidated a special act authorizing a claimant to override the one year time limitation set forth in § 4-148 (a) as an unconstitutional public emolument. *Kinney* v. *State*, supra, 713–16. Although the language of the special act explicitly stated that "such authorization would serve a public purpose by not penalizing a person who exhausts his or her administrative and judicial remedies before filing a claim against the state with the . . . commissioner," the court determined that the act's true purpose was to provide the claimant with an exclusive right not generally available to others similarly situated. Id., 706; see id., 714 ("[e]ven looking beyond the express statement of the public purpose in [the special act], however, we are hard pressed to conclude that there is a legitimate public purpose when the beneficial effect of the special act applies to no member of the public other than the plaintiff in this case for whom it grants a personal privilege" (footnote omitted)). Similarly, in *Kelly* v. *University of Connecticut Health Center*, supra, 260, the court struck down a special act that attempted to authorize the claimant to proceed before the commissioner despite the claim being time barred by § 4-148 (a). The special act provided that permitting the claim to proceed was "supported by compelling equitable circumstances and would serve a public purpose." Id., 248 n.4. Again, the court disagreed and invalidated the act on the ground that it "grant[ed] to the [claimant] alone a personal right not generally available to others similarly situated, and serve[d] no public purpose." Id., 260.

Applying the foregoing legal principles to the present case, we conclude that the special act does not serve a legitimate public purpose and, therefore, is an unconstitutional public emolument. The special act specifically authorizes the defendants, and the defendants alone, to bring their untimely claim before the commissioner. Despite the statutory language that such authorization will "encourag[e] accountable state government," the special act does not permit similarly situated individuals to bring untimely claims against the state for money damages. Indeed, the special act's purported public purpose is belied by the special act's title and plain language, which identifies the defendants by name and individuates their claim against the state.[11] Accordingly, the General Assembly has bestowed the defendants with an exclusive, personal right, not generally available to the public, to bring suit based on a statutory cause of action that would otherwise be barred for failure to comply with a time limit specified in the statute.

The defendants argue that, even if the special act confers on them a direct benefit, a valid public purpose exists because the special act "remedies an injustice done . . . for which the state itself bears responsibility." (Emphasis omitted; internal quotation marks omitted.) *Kelly* v. *University of Connecticut Health Center*, supra, 290 Conn. 258; see also *Kinney* v. *State*, supra, 285 Conn. 711 ("[b]y contrast, we have consistently held that legislation seeking to remedy a procedural default *for which the state is not responsible* does not serve a public purpose" (emphasis added; internal quotation marks omitted)). The defendants contend that they were harmed by the state because, in passing the joint resolution, the General Assembly negligently failed to articulate a legitimate public purpose that would allow their claim to survive an emoluments clause challenge.[12] The defendants overlook, however, that any alleged negligence on the part of the legislature could not have caused their underlying procedural default in failing to bring a timely claim. Stated otherwise, the alleged injury caused by the legislature's failure to articulate a public purpose in the joint resolution accrued *after* the Torrington schools claim was untimely filed with the commissioner. Accordingly, the General Assembly was not responsible for the procedural default that the special act attempts to override.

Moreover, as the trial court aptly determined, there is no indication that the General Assembly intended to authorize the defendants to recover on the legislative negligence claim. Although the defendants sought legislative review of the commissioner's denial of both the Torrington schools and legislative negligence claims, the terms of the special act only permitted the defendants to bring suit for injuries caused by the alleged harmful school conditions. As previously discussed, the special act cites § 4-148 (b) as the exclusive statutory authority authorizing the defendants' claim to proceed before the commissioner. Section 4-148 (b) provides the General Assembly with the ability to authorize claims barred by the one year limitation period set forth in § 4-148 (a). By contrast, General Statutes § 4-158 (b)[13] or General Statutes § 4-159 (b)[14] authorize the legislature to review, vacate, and remand decisions of the commissioner over claims that were *timely filed*. As we previously have stated, and as the defendants stipulate, the legislative negligence claim was brought within one year of the alleged injury accruing. Accordingly, the legislative negligence claim was timely filed for the purpose of § 4-148 (a), rendering §§ 4-158 (b) and 4-159 (b) the proper statutory mechanisms by which to authorize the claim to proceed before the commissioner. The special act, however, makes no reference to § 4-158 or § 4-159, despite the fact that the defendants explicitly cited both provisions in their appeal for legislative review from the commissioner's decision.

In addition, the special act exclusively refers to dates and injuries relevant to the Torrington schools claim. By its terms, the special act authorizes the defendants "pursuant to the provisions of subsection (b) of section 4-148 of the general statutes to present their respective claims against the state to the . . . [c]ommissioner . . . ." and that "[t]he General Assembly . . . finds it just and equitable that the time limitations provided for in subsection (a) of section 4-148 of the general statutes be tolled in a case such as this, involving claimants who initially filed notice of their claims against the state with the . . . [c]ommissioner on May 2, 2007, *for injuries that are alleged to have accrued on September 15, 2006* . . . ." (Emphasis added.) See Special Acts 2017, No. 17-4, § 1 (a). By contrast, the special act makes no reference to the legislature's failure to articulate a public purpose in the joint resolution or correctly remand the Torrington schools claim to proceed before the commissioner. "[I]t is a well settled principle of statutory construction that the legislature knows how to convey its intent expressly . . . or to use broader or limiting terms when it chooses to do so." (Citation omitted.) *Scholastic Book Clubs, Inc.* v. *Commissioner of Revenue Services*, 304 Conn. 204, 219, 38 A.3d 1183, cert. denied, 568 U.S. 940, 133 S. Ct. 425, 184 L. Ed. 2d 255 (2012). Accordingly, we find no indication in the plain text of the special act that the legislature intended to authorize the legislative negligence claim to proceed before the commissioner.

B

The defendants next claim that the General Assembly, by accepting the defendants' legislative appeal and remanding the Torrington schools claim to the commissioner, necessarily waived its sovereign immunity with regard to the legislative negligence claim as well. According to the defendants, the General Assembly was not required to specifically authorize the legislative negligence claim through the special act or some other action because the statutory process by which the General Assembly reviews, vacates, and remands decisions by the commissioner constitutes, by law, an implicit waiver of sovereign immunity. We are not persuaded.

"The principles governing statutory waivers of sovereign immunity are well established. [A] litigant that seeks to overcome the presumption of sovereign immunity [pursuant to a statutory waiver] must show that . . . the legislature, either expressly or by force of a necessary implication, statutorily waived the state's sovereign immunity . . . . In making this determination, [a court shall be guided by] the well established principle that statutes in derogation of sovereign immunity should be strictly construed. . . . [When] there is any doubt about their meaning or intent they are given the effect which makes the least rather than the most change in sovereign immunity. . . . Furthermore,

because such statutes are in derogation of the common law, [a]ny statutory waiver of immunity must be narrowly construed . . . and its scope must be confined strictly to the extent the statute provides. . . . Whether the legislature has waived the state's sovereign immunity raises a question of statutory interpretation." (Citation omitted; internal quotation marks omitted.) *Allen* v. *Commissioner of Revenue Services*, 324 Conn. 292, 299–300, 152 A.3d 488 (2016), cert. denied, U.S. , 137 S. Ct. 2217, 198 L. Ed. 2d 659 (2017).

This court previously has clarified that, "in order for a statute to waive sovereign immunity by force of necessary implication, it is not sufficient that the claimed waiver reasonably may be implied from the statutory language. It must, by logical necessity, be the only possible interpretation of the language. . . . Further, because ambiguous language in a statute is by definition susceptible to more than one reasonable interpretation . . . any ambiguity as to whether the statute waives sovereign immunity by force of necessary implication is not an ambiguity but, rather, an answer. . . . Simply stated, a statute cannot waive the state's sovereign immunity from suit by force of necessary implication when its language is ambiguous because, logically, such ambiguity forecloses the prospect that an implied waiver of sovereign immunity is the only possible interpretation of the [statutory] language. . . . Thus, unlike our typical process of statutory interpretation pursuant to General Statutes § 1-2z, when the meaning of the statute cannot be ascertained from its plain and unambiguous language, we do not consult extratextual evidence to determine whether the legislature intended to waive sovereign immunity by force of necessary implication. . . . Instead, the existence of an ambiguity 'ends the inquiry,' and we must conclude that the state's immunity from suit has not been implicitly waived by the statute's language." (Citations omitted; emphasis omitted; footnote omitted; internal quotation marks omitted.) *Jezouit* v. *Malloy*, 193 Conn. App. 576, 585–86, 219 A.3d 933 (2019).

The defendants argue that, in reviewing their claims pursuant to §§ 4-158, 4-159, and General Statutes § 4-160, the General Assembly automatically and necessarily waived sovereign immunity as to their legislative negligence claim. In particular, the defendants rely on language set forth in § 4-160 (c), which provides in relevant part that "[i]n each action authorized by . . . the General Assembly pursuant to section 4-159 or 4-159a . . . [t]he state waives its immunity from liability and from suit in each such action and waives all defenses which might arise from the eleemosynary or governmental nature of the activity complained of [and] [t]he rights and liability of the state in each such action shall be coextensive with and shall equal the rights and liability of private persons in like circumstances."[15]

The defendants' claim requires us to review the legislative appeal process for claims against the state for money damages that have been dismissed or denied by the commissioner. As an initial matter, when the commissioner denies or dismisses a claim under § 4-158 (a) (1), the claimant may seek legislative review of the commissioner's decision under § 4-158 (b). On reviewing the claim, the General Assembly may either: (1) confirm the commissioner's decision; see General Statutes § 4-159 (b) (1) (A); (2) vacate the decision and either order payment or authorize the claimant to sue the state; see General Statutes § 4-159 (b) (1) (B); or (3) remand the claim to the commissioner for such further proceedings as the General Assembly may direct. See General Statutes § 4-159 (b) (4).

When the General Assembly authorizes a claim to proceed or remands it for further proceedings before the commissioner, § 4-160 (c) provides in relevant part that "*the claimant shall allege such authorization and the date on which it was granted*, except that *evidence of such authorization* shall not be admissible in such action as evidence of the state's liability. The state waives its immunity from liability and from suit in each such action and waives all defenses which might arise from the eleemosynary or governmental nature of the activity complained of. The rights and liability of the state in each such action shall be coextensive with and shall equal the rights and liability of private persons in like circumstances." (Emphasis added.)

Reading this statutory framework as a whole, we conclude that the General Assembly did not implicitly waive sovereign immunity with regard to the legislative negligence claim. First, it is clear from the plain language of § 4-159 that any action taken by the legislature in response to a request to review a claim cannot arise automatically by operation of law. Rather, each subsection requires the legislature to take some positive action indicating that it either (1) confirms the commissioner's decision; (2) vacates the decision and either orders payment or authorizes the claimant to sue; or (3) remands the claim to the commissioner for further proceedings as the General Assembly may direct. Second, § 4-160 (c) indicates that the claimant carries the burden of "alleg[ing]" that the legislature authorized the claimant to proceed before the commissioner and the date on which such authorization was granted. Moreover, § 4-160 (c) provides in relevant part that "*evidence of such authorization* shall not be admissible in such action as evidence of the state's liability." (Emphasis added.) Read together, this language implies that the claimant must identify some action taken by the legislature that demonstrates "evidence of such authorization" for the claim to proceed before the commissioner. Allowing a claim to proceed where the legislature was silent would contradict the plain language of the statute.

In the present case, the special act was the only action taken by the General Assembly on review from the commissioner regarding either the Torrington schools claim or the legislative negligence claim. As we previously have stated, the special act was silent as to the legislative negligence claim, as well as the statutory provisions that provide the authority to remand the legislative negligence claim to the commissioner. There was no separate directive remanding the alleged legislative negligence claim to the commissioner or waiving immunity as to that claim. Permitting the defendants to proceed without any sort of indication from the legislature would contradict our law's strong presumption of sovereign immunity. See *Morneau* v. *State*, supra, 150 Conn. App. 253; id., 252–53 ("[w]here there is any doubt about its meaning or intent, we should give it the effect that makes the least rather than the most change in sovereign immunity . . . [n]othing can be taken by implication against the state" (citations omitted; internal quotation marks omitted)). This principle applies with particular force in the present circumstances, where the defendants seek legislative authorization to recover for negligence allegedly committed by the legislature undertaking a core legislative function. In the absence of any indication that the legislature intended for the defendants to recover against itself for its own alleged negligence, the defendants' claim must fail. Accordingly, the state was entitled to judgment as a matter of law and the court correctly rendered summary judgment.

II

The defendants' second claim is that the court improperly dismissed their counterclaim on the ground that it was barred by sovereign immunity. Specifically, the defendants claim that the General Assembly, pursuant to §§ 4-158, 4-159, and 4-160, impliedly waived sovereign immunity as to the defendants' counterclaim by reviewing the defendants' claims and remanding the Torrington schools claim to proceed before the commissioner. We disagree.

As a preliminary matter, we set forth the appropriate standard of review and relevant legal principles that guide our disposition of this claim. "A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court. . . . A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . [O]ur review of the trial court's ultimate legal conclusion and resulting [decision to] grant . . . the motion to dismiss will be de novo. . . . [T]he doctrine of sovereign immunity implicates subject matter jurisdiction and is therefore a basis for granting a motion to dismiss." (Citation omitted; internal quotation marks omitted.) *Columbia Air Services*,

*Inc.* v. *Dept. of Transportation*, 293 Conn. 342, 346–47, 977 A.2d 636 (2009).

"Sovereign immunity relates to a court's subject matter jurisdiction over a case, and therefore presents a question of law over which we exercise de novo review. . . . In so doing, we must decide whether [the trial court's] conclusions are legally and logically correct and find support in the facts that appear in the record. . . . [T]he sovereign immunity enjoyed by the state is not absolute. There are [three] exceptions: (1) when the legislature, either expressly or by force of a necessary implication, statutorily waives the state's sovereign immunity . . . (2) when an action seeks declaratory or injunctive relief on the basis of a substantial claim that the state or one of its officers has violated the plaintiff's constitutional rights . . . and (3) when an action seeks declaratory or injunctive relief on the basis of a substantial allegation of wrongful conduct to promote an illegal purpose in excess of the officer's statutory authority. . . . For a claim [for money damages] made pursuant to the first exception, this court has recognized the well established principle that statutes in derogation of sovereign immunity should be strictly construed. . . . Where there is any doubt about their meaning or intent they are given the effect which makes the least rather than the most change in sovereign immunity." (Citations omitted; internal quotation marks omitted.) Id., 349–50.

On appeal, the defendants again claim that the General Assembly impliedly waived sovereign immunity, pursuant to §§ 4-158, 4-159, and 4-160, by reviewing and remanding the Torrington schools claim to proceed before the commissioner.[16] In particular, the defendants rely on language set forth in § 4-160 (c), which provides in relevant part, "[i]n each action authorized by . . . the General Assembly pursuant to section 4-159 or 4-159a . . . the state waives its immunity from liability and from suit in each such action and waives all defenses which might arise from the eleemosynary or governmental nature of the activity complained of. . . ." The defendants interpret this language to mean that the General Assembly, by remanding the Torrington schools claim to proceed before the commissioner, waived sovereign immunity for the defendants' counterclaim in this subsequent declaratory judgment action. We find this reading to be misguided.

Looking closely at the statutory language, § 4-160 (c)'s waiver applies only to *actions authorized by the General Assembly pursuant to §§ 4-159 and 4-159a.* Specifically, the waiver, by its terms, applies to suits for money damages that the General Assembly has authorized against the state; see General Statutes § 4-159 (b) (1) (B); or claims that the General Assembly has remanded to the commissioner for further proceedings. See General Statutes § 4-159 (b) (4). Section 4-160 (c)

does not apply to separate declaratory judgment actions brought by the state challenging the constitutionality of special legislation. Accordingly, in order to recover money damages on their counterclaim against the state for its alleged due process violation in bringing the declaratory judgment action, the defendants must identify a separate statutory waiver of sovereign immunity permitting them to do so. See *Columbia Air Services, Inc.* v. *Dept. of Transportation,* supra, 293 Conn. 346–50. As we previously have stated, the only legislative action waiving sovereign immunity in the present case was the special act authorizing the defendants to proceed before the commissioner on the Torrington schools claim. In the absence of a statutory waiver of sovereign immunity, the only other avenue by which the defendants may recover for money damages on their counterclaim is to present their counterclaim before the commissioner. See *Chief Information Officer* v. *Computers Plus Center, Inc.,* 310 Conn. 60, 96, 74 A.3d 1242 (2013) ("the defendant's failure to present its counterclaims for damages to the [c]laims [c]ommissioner and to obtain legislative permission to sue the department pursuant to § 4-160 prior to bringing its counterclaims deprives the trial court of subject matter jurisdiction over those counterclaims"); see also *Avoletta II,* supra, 152 Conn. App. 183. Because the defendants have not done so, there is no jurisdictional basis on which their counterclaim can proceed. Accordingly, we conclude that the defendants' counterclaim is barred by sovereign immunity.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Hereinafter, we refer to Joanne Avoletta, Peter Avoletta, and Mathew Avoletta, collectively, as the defendants, and individually by name where appropriate. Joanne Avoletta is the mother of Peter Avoletta and Matthew Avoletta.

[2] The defendants alleged that Peter Avoletta "suffers from irreversible lung disease" and Matthew Avoletta "suffers from chronic allergies and asthma."

[3] General Statutes § 4-148 (a) provides: "Except as provided in subsection (b) of this section and section 4-165b, no claim shall be presented under this chapter but within one year after it accrues. Claims for injury to person or damage to property shall be deemed to accrue on the date when the damage or injury is sustained or discovered or in the exercise of reasonable care should have been discovered, provided no claim shall be presented more than three years from the date of the act or event complained of."

[4] General Statutes § 4-148 (b) provides: "The General Assembly may, by special act, authorize a person to present a claim to the Office of the Claims Commissioner after the time limitations set forth in subsection (a) of this section have expired if it deems such authorization to be just and equitable and makes an express finding that such authorization is supported by compelling equitable circumstances and would serve a public purpose. Such finding shall not be subject to review by the Superior Court."

[5] Substitute House Joint Resolution No. 11-34, § 2, provides in relevant part that "the decision of the . . . [c]ommissioner . . . ordering the dismissal of the claims against the state in excess of seven thousand five hundred dollars of [the defendants], is vacated and the [defendants] are authorized to institute and prosecute to final judgment an action against the state to recover damages as compensation for injury to person or damage to property, or both, allegedly suffered by the claimants as set forth in said claims."

[6] Number 17-4 of the 2017 Special Acts provides: "(a) Notwithstanding the failure to file a proper notice of a claim against the state with the

clerk of the Office of the Claims Commissioner, within the time limitations specified by subsection (a) of section 4-148 of the general statutes, Joanne Avoletta, Peter Avoletta, and Matthew Avoletta are authorized pursuant to the provisions of subsection (b) of section 4-148 of the general statutes to present their respective claims against the state to the Claims Commissioner. The General Assembly finds that there is a public purpose served by encouraging accountable state government through the full adjudication of cases involving persons who claim to have been injured by the conduct of state actors. The General Assembly further finds it just and equitable that the time limitations provided for in subsection (a) of section 4-148 of the general statutes be tolled in a case such as this, involving claimants who initially filed notice of their claims against the state with the Claims Commissioner on May 2, 2007, for injuries that are alleged to have accrued on September 15, 2006, which allegations, if viewed in a light most favorable to the claimants, provide notice to the state of their claims within the statute of limitations for injuries to their person. The General Assembly deems such authorization to be just and equitable and finds that such authorization is supported by compelling equitable circumstances and would serve a public purpose. Such claims shall be presented to the Claims Commissioner not later than one year after the effective date of this section.

"(b) The state shall be barred from setting up the failure to comply with the provisions of sections 4-147 and 4-148 of the general statutes, from denying that notice of the claims was properly and timely given pursuant to sections 4-147 and 4-148 of the general statutes and from setting up the fact that the claims had previously been considered by the Claims Commissioner, by the General Assembly or in a judicial proceeding as defenses to such claims."

[7] The state also filed a motion to stay the proceedings before the commissioner pending the court's resolution of the constitutionality of the special act.

[8] In the defendants' memorandum in support of their motion to dismiss, they alleged, inter alia, that (1) the court lacked personal jurisdiction over the defendants due to the state's insufficient service of process; (2) the court lacked subject matter jurisdiction because the commissioner had not yet issued a final judgment and was not joined as a party to the declaratory judgment action; (3) the state lacked standing to bring the declaratory judgment action; (4) the claim was not ripe for adjudication; (5) the state's claim was judicially estopped; and (6) the court's exercise of jurisdiction over the claim violated separation of power principles.

[9] Specifically, the defendants alleged, inter alia, that the state's filing of a declaratory judgment action (1) violated their rights by alleging that their claims were not timely filed; (2) violated the plain language of the special act; and (3) impermissibly interfered with the defendants' right to a fair hearing and their ability to recover under the special act.

[10] As we previously have stated, the court held that the issue of whether the Torrington schools claim was timely filed pursuant to § 4-148 (a) was barred by the doctrine of collateral estoppel. The defendants have not challenged that conclusion in their brief or at oral argument before this court. Rather, they stipulate in their brief that the Torrington schools claim was untimely filed.

[11] The special act is entitled "An Act Concerning The Claims Against The State of Joanne Avoletta, Peter Avoletta and Matthew Avoletta" and provides in relevant part that, "[n]otwithstanding the failure to file a proper notice of a claim against the state with the clerk of the Office of the Claims Commissioner, within the time limitations specified by subsection (a) of section 4-148 of the general statutes, *Joanne Avoletta*, *Peter Avoletta*, *and Matthew Avoletta are authorized pursuant to the provisions of subsection (b) of section 4-148 of the general statutes to present their respective claims against the state to the Claims Commissioner*." (Emphasis added.) The special act does not authorize any other claimants, or class of claimants, to override the one year statute of limitation set forth in § 4-148 (a) for injuries stemming from the conditions of the Torrington schools or, more generally, from the "conduct of state actors."

[12] At summary judgment, the defendants argued that both the executive branch and the legislative branch were responsible for their failure to timely bring the Torrington schools claim. Regarding the executive branch, the defendants alleged that they relied on (1) the attorney general's acknowledgment that the state had a duty to provide a safe school setting for the children; and (2) his directive to the Commissioner of Education to take appropriate corrective action, and that such reliance unjustly prevented

them from bringing a timely claim against the state. As to the legislative branch, the defendants claimed that they were harmed by the General Assembly's failure to articulate a legitimate public policy in the joint resolution. In its memorandum of decision on the state's motion for summary judgment, the court addressed only the alleged harm caused by the executive branch, holding that any assurances that the defendants may have received from the attorney general did not foreclose the timely filing of the Torrington schools claim and, accordingly, did not amount to the kind of procedural default for which the state could be held responsible. On appeal, the defendants abandon the argument that the executive branch caused their untimely filing. Instead, the defendants focus solely on the legislature's purported failure to articulate a public purpose in the joint resolution.

[13] General Statutes § 4-158 (b) provides: "Any person who has filed a claim for more than fifty thousand dollars may request the General Assembly to review a decision of the Claims Commissioner (1) ordering the denial or dismissal of the claim pursuant to subdivision (1) of subsection (a) of this section, including denying or dismissing a claim that requests permission to sue the state, or (2) ordering immediate payment of a just claim in an amount not exceeding thirty-five thousand dollars pursuant to subdivision (2) of subsection (a) of this section. A request for review shall be in writing and filed with the Office of the Claims Commissioner not later than twenty days after the date the person requesting such review receives a copy of the decision. The filing of a request for review shall automatically stay the decision of the Claims Commissioner."

Section 4-158 (b) was amended by the legislature in 2021. See Public Acts 2021, No. 21-91, § 4. That amendment has no bearing on this appeal. In the interest of simplicity, we refer to the current revision of the statute.

[14] General Statutes § 4-159 (b) provides: "The General Assembly shall: (1) With respect to a decision of the Claims Commissioner ordering the denial or dismissal of a claim pursuant to subdivision (1) of subsection (a) of section 4-158: (A) Confirm the decision; or (B) Vacate the decision and, in lieu thereof, (i) order the payment of the claim in a specified amount, or (ii) authorize the claimant to sue the state; (2) With respect to a decision of the Claims Commissioner ordering the immediate payment of a just claim in an amount not exceeding thirty-five thousand dollars pursuant to subdivision (2) of subsection (a) of section 4-158: (A) Confirm the decision; (B) Modify the decision by ordering that a different amount be paid; or (C) Vacate the decision and, in lieu thereof, (i) order no payment be made, or (ii) authorize the claimant to sue the state; (3) With respect to a decision of the Claims Commissioner recommending payment of a just claim in an amount exceeding thirty-five thousand dollars pursuant to subdivision (3) of subsection (a) of section 4-158: (A) Accept the recommendation and order payment of the specified amount; (B) Modify the recommendation by ordering that a different amount be paid; or (C) Reject the recommendation and, in lieu thereof, (i) order no payment be made, or (ii) authorize the claimant to sue the state; or (4) With respect to a decision of the . . . [c]ommissioner pursuant to subdivision (1), (2) or (3) of subsection (a) of section 4-158, remand the claim to the Office of the Claims Commissioner for such further proceedings as the General Assembly may direct."

Section 4-159 (b) was amended by the legislature in 2021. See Public Acts 2021, No. 21-91. That amendment has no bearing on this appeal. In the interest of simplicity, we refer to the current revision of the statute.

[15] The legislature has amended § 4-160 (c) since the events underlying this appeal. See Public Acts 2021, No. 21-91, § 6. That amendment has no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of the statute.

[16] The defendants' counterclaim also sought declaratory and injunctive relief on the ground that the attorney general acted in excess of his statutory authority and violated the defendants' due process right to have their claims heard by filing the present declaratory judgment action. The court dismissed those claims as barred by sovereign immunity. The defendants have not raised those arguments on appeal or included them as grounds for relief in their brief to this court. Accordingly, we decline to review them. See *Morrisey-Manter* v. *Saint Francis Hospital & Medical Center*, 166 Conn. App. 510, 526–27, 142 A.3d 363, cert. denied, 323 Conn. 924, 149 A.3d 982 (2016).