JOAN A. KINNEY, ADMINISTRATRIX (ESTATE OF
FRANK J. KINNEY, JR.) *v.* STATE
OF CONNECTICUT
(SC 18020)

Katz, Palmer, Vertefeuille, Zarella and McWeeny, Js.

Argued January 10—officially released March 4, 2008

*Roger J. Frechette*, for the appellant (plaintiff).

*Michael R. Bullers*, assistant attorney general, with whom, on the brief, was *Richard Blumenthal*, attorney general, for the appellee (defendant).

*Opinion*

KATZ, J. The plaintiff, Joan A. Kinney, administratrix of the estate of her husband, the Honorable Frank J. Kinney, Jr. (decedent), a Superior Court judge, appeals[1]

[1] The plaintiff appealed from the trial court's judgment to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

from the summary judgment rendered in favor of the defendant, the state of Connecticut, on her claim alleging negligence in connection with the decedent's death. The plaintiff claims that the trial court improperly concluded that the special act under which the legislature had extended the time limitation under General Statutes § 4-148[2] to bring her claim against the state; Special Acts 1994, No. 94-13, § 1 (S.A. 94-13);[3] constitutes an unconstitutional exclusive public emolument or privilege because it does not serve a public purpose and therefore the court improperly determined that S.A. 94-13 could not be used to extend the time to bring her claim. We disagree with the plaintiff, and, therefore, affirm the judgment.

The record discloses the following undisputed facts and procedural history. On September 28, 1986, the decedent collapsed at home and died of an apparent heart attack. On December 16, 1986, the plaintiff initiated a workers' compensation claim, essentially asserting that the decedent's death was causally related

___

[2] General Statutes § 4-148 provides: "(a) Except as provided in subsection (b) of this section, no claim shall be presented under this chapter but within one year after it accrues. Claims for injury to person or damage to property shall be deemed to accrue on the date when the damage or injury is sustained or discovered or in the exercise of reasonable care should have been discovered, provided no claim shall be presented more than three years from the date of the act or event complained of.

"(b) The General Assembly may, by special act, authorize a person to present a claim to the Claims Commissioner after the time limitations set forth in subsection (a) of this section have expired if it deems such authorization to be just and equitable and makes an express finding that such authorization is supported by compelling equitable circumstances and would serve a public purpose. Such finding shall not be subject to review by the Superior Court.

"(c) No claim cognizable by the Claims Commissioner shall be presented against the state except under the provisions of this chapter. Except as provided in section 4-156, no claim once considered by the Claims Commissioner, by the General Assembly or in a judicial proceeding shall again be presented against the state in any manner."

[3] The full text of S.A. 94-13 is set forth later in the text of this opinion.

to work induced stress. On July 30, 1987, during the course of the workers' compensation proceedings, but prior to the expiration of the time limitation under § 4-148 (a) for filing a claim against the state with the claims commissioner, the assistant attorney general representing the state informed the plaintiff's counsel before the workers' compensation commissioner for the third district (commissioner) that it was the state's position that judges are not "employees" and hence not entitled to workers' compensation benefits, and that the state would be filing an appropriate motion regarding this issue. Following the commissioner's conclusion that the decedent was an employee for purposes of the Workers' Compensation Act; General Statutes (Rev. to 1985) § 31-275 (5); and that his death arose out of and in the course of his employment, the commissioner awarded the plaintiff the maximum allowable spousal survivorship benefits under General Statutes (Rev. to 1985) § 31-306 (b) (2). The state then appealed from that decision to the compensation review division (review division),[4] challenging the validity of the commissioner's determination that the plaintiff's claim fell within the jurisdiction of the Workers' Compensation Act. The state maintained that a state court judge is not an "employee" for purposes of workers' compensation, and does not have an employer-employee relationship with the state. Pursuant to the procedure authorized by General Statutes (Rev. to 1989) § 31-324, the review division sought guidance on these questions of law, and propounded the reservation that was the subject of this court's decision in *Kinney* v. *State*, 213 Conn. 54, 55, 566 A.2d 670 (1989), in which this court agreed with the state's position and concluded that judges are not "employees" within the workers' compensation scheme.

---

[4] The compensation review division was changed to the compensation review board in 1991. See Public Acts 1991, No. 91-339, § 32.

Over the next few years following this decision, the plaintiff pursued numerous legal avenues in an attempt to obtain additional benefits from the state. First, she returned to the review division, which ruled against her, and then she filed an appeal from that decision to the Appellate Court, which also ruled against her in an unpublished decision. The plaintiff then filed a petition for certification to appeal to the Connecticut Supreme Court, and a petition for certiorari to the United States Supreme Court, both of which were unsuccessful. *Kinney* v. *State*, 215 Conn. 807, 576 A.2d 538, cert. denied, 498 U.S. 898, 111 S. Ct. 251, 112 L. Ed. 2d 209 (1990). The plaintiff then initiated an action against the state in federal court, contending that the state's denial both impaired the decedent's employment contract with the state and violated her fifth and fourteenth amendment rights. The United States District Court dismissed the case, and the Second Circuit Court of Appeals subsequently affirmed the decision. *Kinney* v. *Connecticut Judicial Dept.*, 974 F.2d 313, 315 (2d Cir. 1992). Finally, the plaintiff brought an identical action in Superior Court, which was dismissed. *Kinney* v. *State*, Superior Court, judicial district of Hartford, Docket No. CV91-395815 (December 22, 1992) (8 Conn. L. Rptr. 103). At no time during this period did the plaintiff file a claim with the claims commissioner seeking permission to file an action against the state.

On or about July 29, 1994, nearly eight years after the decedent's death, the plaintiff filed a claim with the claims commissioner seeking permission to sue the state for negligence. The claim alleged that the plaintiff had been authorized to file the otherwise untimely claim pursuant to S.A. 94-13, § 1, which had been approved by the legislature on June 7, 1994, and which provided: "(a) Notwithstanding the failure to file a proper notice of a claim against the state with the clerk of the office of the claims commissioner, as required by section 4-

147 of the general statutes, within the time limitations specified by subsection (a) of section 4-148 of the general statutes, and notwithstanding the provisions of subsection (c) of said section 4-148 barring the presentment of a claim once considered by the claims commissioner, by the general assembly or in a judicial proceeding, [the plaintiff] is authorized pursuant to the provisions of subsection (b) of said section 4-148 to present her claim against the state to the claims commissioner, provided she files a notice of such claim with the clerk of the office of the claims commissioner in accordance with said section 4-147 not later than October 1, 1994.

"(b) The general assembly finds: That [the plaintiff] is the widow of [the decedent]; that [the decedent] was a judge of the superior court who died from a heart attack on September 28, 1987;[5] that [the decedent], at the time of his death, in addition to his judicial responsibilities was the presiding criminal and administrative judge for the judicial district of New Haven, the chief administrative judge of the criminal division of the superior court and the chairman of the Commission to Study Alternate Sentences; that [the plaintiff] filed a workers' compensation claim against the state alleging that the decedent's fatal heart condition was causally related to work-induced stress; that the workers' compensation commissioner for the third district decided that the decedent's death arose out of and in the course of his employment and awarded [the plaintiff] the maximum allowable spousal survivorship benefits; that the state appealed the decision to the compensation review division; that the state appealed not on the issue of causation but on whether a judge is an employee for workers' compensation purposes; that the compensation review division reserved the questions of law for the advice of

---

[5] In enacting S.A. 94-13, the legislature inaccurately stated that the decedent had died on September 28, 1987. In fact, he had died one year earlier, on September 28, 1986.

the appellate court; that the supreme court transferred the reservation to itself; that the supreme court on November 28, 1989, in *Kinney* v. *State*, [supra] 213 Conn. 54, decided that a judge is not an employee for purposes of entitlement to workers' compensation benefits; that a subsequent hearing in the compensation review division was decided adversely to [the plaintiff], as was the appeal of that decision to the appellate court, and the petition for certification for appeal from the appellate court was denied by the supreme court on May 10, 1990, in *Kinney* v. *State*, [supra] 215 Conn. 807; that a petition for certiorari was denied by the United States Supreme Court; that an action against the state in federal District Court was decided adversely to [the plaintiff] and, upon appeal of that decision, the Second Circuit Court of Appeals affirmed the decision of the District Court; that an action in superior court was dismissed on the grounds of sovereign immunity; and that [the plaintiff] failed to timely file a notice of claim against the state with the claims commissioner because she initially prevailed in her claim for workers' compensation benefits and then was forced to litigate her claim to benefits when the state appealed that award. The general assembly further finds it would be just and equitable to authorize [the plaintiff] to present her claim against the state to the claims commissioner, that there are compelling equitable circumstances to support such authorization and that such authorization would serve a public purpose by not penalizing a person who exhausts his or her administrative and judicial remedies before filing a claim against the state with the claims commissioner.

"(c) The state shall be barred from setting up the failure to comply with the provisions of sections 4-147 and 4-148 of the general statutes, from denying that notice of the claim was properly and timely given pursuant to said sections 4-147 and 4-148 and from setting

up the fact that the claim had once been considered by the claims commissioner, by the general assembly or in a judicial proceeding as defenses to such claim."[6]

On December 6, 2000, after the parties filed briefs and a hearing was held, the claims commissioner rendered a decision on the merits denying the plaintiff permission to bring an action against the state. The legislature subsequently rejected the claims commissioner's recommendation and authorized the plaintiff to institute an action for damages against the state. See Substitute House Joint Resolution No. 41, File No. 540 (May 1, 2001).

On or about October 1, 2001, the plaintiff filed a single count complaint alleging that the state had been negligent by assigning the decedent an extraordinary amount of work, which resulted in excessive stress and, ultimately, his death. On November 29, 2001, the state moved to dismiss the action for lack of subject matter jurisdiction on the grounds that the plaintiff's action was not timely under § 4-148 (a) and that S.A. 94-13, extending the time in which the plaintiff could bring a claim against the state in connection with the decedent's death, was an unconstitutional exclusive public emolument or privilege in violation of article first, § 1, of the state constitution.[7] Despite the fact that the plaintiff had filed her claim several years beyond the statutory time limitation, the trial court, *Arnold, J.,* denied the motion to dismiss on May 29, 2003, on the ground that S.A. 94-13 was not unconstitutional because the

---

[6] Sections 2 and 3 of S.A. 94-13 deemed actions filed against the state by two other individuals to be timely and barred the state from asserting statutory time limitations as a defense. One of these actions also related to a claim that was required to be presented to the claims commissioner.

[7] Article first, § 1, of the constitution of Connecticut provides: "All men when they form a social compact, are equal in rights; and no man or set of men are entitled to exclusive public emoluments or privileges from the community."

legislature had a valid public purpose in permitting the plaintiff to bring the late claim. *Kinney* v. *State*, Superior Court, judicial district of New Haven, Docket No. CV010456273 (May 29, 2003).

Thereafter, on November 10, 2004, the state moved for summary judgment. The state's principal contention was that S.A. 94-13 violates the prohibition against "exclusive public emoluments or privileges from the community" under article first of the state constitution and, consequently, the claims commissioner lacked authority to entertain the plaintiff's untimely request for permission to sue the state.[8] *Kinney* v. *State*, Superior Court, judicial district of New Haven, Docket No. DNCV01-0456273S (August 18, 2006) (41 Conn. L. Rptr. 856, 858). The trial court, *Robaina, J.*, concluded that S.A. 94-13 did not serve a valid public purpose and, therefore, ran afoul of article first, § 1. Id., 859. Accordingly, the court concluded that S.A. 94-13 could not extend the time in which the plaintiff's claim against the state, alleging negligence in connection with her decedent's death, could be presented under § 4-148 (a) and granted the state's motion for summary judgment. Id. This appeal followed.

On appeal, the plaintiff claims that the trial court's grant of the state's motion for summary judgment was improper because S.A. 94-13 served a public purpose "by encouraging a work ethic of a judge, indeed, any employee of the [s]tate of Connecticut." We conclude that, although well intentioned, S.A. 94-13 benefits no member of the public other than the plaintiff and remedies a procedural default arising from the plaintiff's failure to file a claim with the claims commissioner within three years "from the date of the act or event

---

[8] The state also claimed that it owed no duty to the decedent as a matter of law. Because of the trial court's decision in favor of the state on its primary claim, the court did not address the other ground asserted.

complained of"; General Statutes § 4-148 (a); for which the state itself bore no responsibility. Accordingly, the trial court properly rendered summary judgment in favor of the state.

As a preliminary matter, we set forth the applicable standard of review and governing legal principles. "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing . . . that the party is . . . entitled to judgment as a matter of law. . . . Our review of the trial court's decision to grant the defendant's motion for summary judgment is plenary." (Internal quotation marks omitted.) *Dark-Eyes* v. *Commissioner of Revenue Services*, 276 Conn. 559, 569–70, 887 A.2d 848, cert. denied, 549 U.S. 815, 127 S. Ct. 347, 166 L. Ed. 2d 26 (2006).

The parties do not challenge in this appeal that, absent S.A. 94-13, the plaintiff's claim was untimely as a matter of law. Cf. *Lagassey* v. *State*, 268 Conn. 723, 731, 846 A.2d 831 (2004). Nor do they contest that compliance with the time limitation under § 4-148 (a) is a jurisdictional prerequisite. Therefore, we turn directly to the question of whether the trial court properly determined that S.A. 94-13 is unconstitutional because it does not serve a public purpose.

"To prevail under article first, § 1, of our constitution, the state must demonstrate that the sole objective of the General Assembly is to grant personal gain or advantage to an individual. . . . If, however, an enactment serves a legitimate public purpose, then it will withstand

a challenge under article first, § 1. . . . Moreover, we conduct our review of [the special act] mindful that legislative enactments carry with them a strong presumption of constitutionality, and that a party challenging the constitutionality of a validly enacted statute bears the heavy burden of proving the statute unconstitutional beyond a reasonable doubt." (Citations omitted; internal quotation marks omitted.) *Chotkowski* v. *State*, 240 Conn. 246, 257–58, 690 A.2d 368 (1997).

"The scope of our review as to whether an enactment serves a public purpose is limited. [W]hat constitutes a public purpose is primarily a question for the legislature, and its determination should not be reversed by the court unless it is manifestly and palpably incorrect."[9] (Internal quotation marks omitted.) Id., 259. In determining whether a special act serves a public purpose, a court must uphold it "unless there is no reasonable ground upon which it can be sustained. . . . Thus, if there be the least possibility that making the gift will be promotive in any degree of the public welfare . . . we are bound to uphold it against a constitutional challenge predicated on article first, § 1 [of the state constitution]." (Citations omitted; internal quotation marks omitted.) Id.

---

[9] Although subsection (b) of § 4-148 provides that there shall be no judicial review of the legislature's finding of a public purpose, we explained in *Chotkowski* v. *State*, supra, 240 Conn. 258, why that prohibition cannot be given effect: "Because an enactment must serve a valid public purpose in order to avoid the prohibition against the granting of exclusive public emoluments and privileges contained in article first, § 1, of the state constitution, the determination of whether an enactment serves such a purpose is necessarily one of constitutional magnitude. It is the court's duty to ensure that legislative action falls within constitutional boundaries . . . even if that action involves a waiver of the immunity from suit enjoyed by the state under the common law. Consequently, the legislature cannot by mere fiat or finding, make public a truly private purpose . . . . Its findings and statements about what is or is not public cannot be binding upon the court." (Citations omitted; internal quotation marks omitted.)

"In this regard, although a special act passed under § 4-148 (b) will undoubtedly confer a direct benefit upon a particular claimant, we have found a public purpose if it remedies an injustice done to that individual *for which the state itself bears responsibility*. . . . In such circumstances, the benefit conferred upon a private party by the legislature may be viewed as incidental to the overarching public interest that is served in remedying an injustice caused by the state." (Emphasis added; internal quotation marks omitted.) *Lagassey* v. *State*, supra, 268 Conn. 733.

"By contrast, we have consistently held that legislation seeking to remedy a procedural default for which the state is not responsible does not serve a public purpose and, accordingly, runs afoul of article first, § 1, of the state constitution. See, e.g., *Merly* v. *State*, [211 Conn. 199, 212–13, 558 A.2d 977 (1989)] . . . . Thus, legislation cannot survive a constitutional challenge under article first, § 1, if it excuses a party's failure to comply with a statutory notice requirement simply because the noncompliance precludes consideration of the merits of the party's claim." (Citations omitted.) *Chotkowski* v. *State*, supra, 240 Conn. 260 n.18. Similarly, "where a special act has allowed a person named therein to bring a suit based upon a statutory cause of action that would otherwise be barred for failure to comply with a time limit specified in the statute, we have ordinarily been unable to discern any public purpose sufficient to sustain the enactment." *Merly* v. *State*, supra, 213.

The plaintiff has argued on appeal, as she did in the trial court, that, even though S.A. 94-13 conferred a direct benefit upon her, and indeed only her, it nevertheless can be sustained because it furthered a public purpose and was enacted with that end in view. The public purpose advanced, according to the plaintiff, is the legis-

lature's interest in encouraging and promoting productivity and in rewarding diligent government workers.

The state contends in response that the special act's waiver of the time limitation set forth in § 4-148 (a) violated the state constitutional prohibition against exclusive public emoluments or privileges because S.A. 94-13 prefers a certain individual over others and is wholly unrelated to the public interest. Specifically, the state claims that the enactment of S.A. 94-13 created a preference that cannot withstand constitutional scrutiny because its *sole* objective was to grant personal gain to one individual, namely, the plaintiff in this case. Additionally, the state claims that the legislature neither can make a private purpose a public one simply by stating so, nor can it insulate its public purpose determination from judicial scrutiny. Therefore, the state contends that the fact that the legislature declared there to be "compelling equitable circumstances to support" the authorization to the plaintiff to bring this action and bar the state from relying on the time provisions of § 4-148 (a) is not controlling. We agree with the state.

The legislature cannot "by mere fiat or finding, make 'public' a truly 'private' purpose . . . . Its findings and statements about what is or is not 'public' cannot be binding upon the court. *Lyman* v. *Adorno*, 133 Conn. 511, 517, 52 A.2d 702 [1947]." *Wilson* v. *Connecticut Product Development Corp.*, 167 Conn. 111, 116 n.2, 355 A.2d 72 (1974). The court also has recognized that "§ 4-148 (b) would be constitutionally infirm to the extent that it were construed to shield from judicial review a legislative determination that its enactment meets the requirements of article first, § 1, of our state constitution." *Chotkowski* v. *State*, supra, 240 Conn. 259; see footnote 9 of this opinion. Therefore, the fact that the legislature stated that the special act served a public purpose does not change the pertinent inquiry for the court.

As this court has recognized, "where a special act has allowed a person named therein to bring a suit based upon a statutory cause of action that would otherwise be barred for failure to comply with a time limit specified in the statute, we have ordinarily been unable to discern any public purpose sufficient to sustain the enactment. *Vecchio* v. *Sewer Authority*, 176 Conn. 497, 503–507, 408 A.2d 254 (1979) (special act validating an appeal from a sewer assessment commenced after expiration of the time for taking such an appeal held unconstitutional); *Hillier* v. *East Hartford*, [167 Conn. 100, 107–109, 355 A.2d 1 (1974)] (special act validating notice of sidewalk defect given to municipality after time allowed held unconstitutional)." *Merly* v. *State*, supra, 211 Conn. 213. Indeed, "[n]o enactment creating a preference can withstand constitutional attack if the sole objective of the General Assembly is to grant personal gain or advantage to an individual." *State ex rel. Higgins* v. *Civil Service Commission*, 139 Conn. 102, 106, 90 A.2d 862 (1952). The special act in question in the present case, S.A. 94-13, granted to the plaintiff alone a personal right not generally available to others similarly situated, and, in accordance with our case law, we see no basis for sustaining the validity of a special act creating a privilege for a particular individual.

The plaintiff contends that, despite the fact that S.A. 94-13 was for her personal benefit and unavailable to others similarly situated, it nevertheless was based on the public purpose of encouraging a work ethic by sending a message "to all government employees . . . to work above and beyond the norm . . . and you will be taken care of." We disagree. Although "[t]he legislative enactment need not contain a specific statement of the public purpose sought to be achieved by it . . . [l]egislative findings . . . purporting to establish the existence of a public purpose should be considered when the text of the act itself incorporates these findings

. . . ." (Citation omitted; internal quotation marks omitted.) *Wilson* v. *Connecticut Product Development Corp.*, supra, 167 Conn. 116 n.2. Those findings reflect no such intent. Even looking beyond the express statement of the public purpose in S.A. 94-13,[10] however, we are hard pressed to conclude that there is a legitimate public purpose when the beneficial effect of the special act applies to no member of the public other than the plaintiff in this case for whom it grants a personal privilege. Special Act 94-13 neither excuses other persons similarly situated from complying with the statutory limitations nor provides circumstances under which such persons may be excused.

Finally, the plaintiff suggests that such a special act may be sustained when equitable grounds can be found to justify the enactment of the special legislation. We are mindful that, in *Sanger* v. *Bridgeport*, 124 Conn. 183, 190, 198 A. 746 (1938), this court upheld the constitutionality of a special act validating a defective notice to the defendant municipality of an injury caused by a defective sidewalk, citing in part certain equitable considerations. In *Sanger*, however, the plaintiff had filed a timely notice that was deficient in form, which had been prepared by a city employee upon whom

---

[10] As with any statute, we are bound to construe S.A. 94-13 in accordance with "General Statutes § 1-2z [which] directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *State* v. *Bletsch*, 281 Conn. 5, 16, 912 A.2d 992 (2007). To the extent that the language of S.A. 94-13, § 1 (b), inserts the phrase "just and equitable," we address, but nevertheless reject, the plaintiff's claimed public purpose of encouraging a work ethic.

the plaintiff had relied. Id., 185. *Sanger* since has been limited to the circumstances discussed therein; *Hillier* v. *East Hartford*, supra, 167 Conn. 110; and this court has restricted these equitable considerations to cases wherein the passage of a special act is based upon the state's recognition of some role played by a government official in causing, or contributing to, the default. *Chotkowski* v. *State*, supra, 240 Conn. 262 ("the challenged special act seeks to remedy an inequity that the legislature rationally concluded had resulted from the plaintiff's reasonable reliance on the misleading conduct of a state official"). This is not the situation in the present case.

We recognize that, when a special act authorizing a suit has been declared unconstitutional, the invalidity of the act often defeats jurisdiction to entertain the action. See *Vecchio* v. *Sewer Authority*, supra, 176 Conn. 507. Nevertheless, nothing in the record of the present case distinguishes its facts from the ordinary case in which a litigant fails to take timely action. Rather than filing a claim with the claims commissioner as her first course of action or concurrently with her pursuit of administrative and judicial remedies, the plaintiff chose to pursue her claim against the state only through administrative and judicial proceedings. Special Act 94-13 essentially would eliminate for her alone the consequences of her litigation choice and would provide no relief to anyone else who either made a similar erroneous litigation choice or who mistakenly believed that exhaustion of administrative and judicial remedies was required before filing a claim with the claims commissioner.[11] Indeed, there is no allegation that any state

---

[11] Indeed, to the extent that the legislature considered it a proper public purpose to forgive a person who mistakenly, and without reliance on a government actor, determines that he or she should exhaust his or her administrative and judicial remedies before filing a claim against the state with the claims commissioner; see S.A. 94-13, § 1 (b) ("authorization would serve a public purpose by not penalizing a person who exhausts his or her administrative and judicial remedies"); we consistently have determined

official misinformed the plaintiff that she had to exhaust these remedies prior to filing a claim with the claims commissioner. Based on the foregoing, it is clear that S.A. 94-13 confers an exclusive public emolument on the plaintiff, and therefore violates article first, § 1, of the state constitution.

The judgment is affirmed.

In this opinion the other justices concurred.

that legislation seeking to remedy a procedural default for which the state is not responsible does not serve a public purpose and, accordingly, runs afoul of article first, § 1, of the state constitution. See, e.g., *Merly* v. *State,* supra, 211 Conn. 214; *Vecchio* v. *Sewer Authority,* supra, 176 Conn. 506–507; *Hillier* v. *East Hartford,* supra, 167 Conn. 108–109.