******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* MATTHEW
AVOLETTA ET AL.
(SC 20723)

Robinson, C. J., and McDonald, Mullins, Ecker and Alexander, Js.

*Syllabus*

In 2007, the defendants, a parent and her two children, filed notice of a
claim with the Claims Commissioner, seeking reimbursement from the
plaintiff, the state of Connecticut, for tuition and costs that they incurred
as a result of the enrollment of the children in private school due to
allegedly unsafe and unsanitary conditions in certain of the Torrington
public school buildings, where the children had been students. The
commissioner dismissed the claim as untimely because it was not filed
within the one year statute of limitations (§ 4-148 (a)) applicable to
claims against the state. The defendants sought legislative review of the
commissioner's ruling pursuant to § 4-148 (b), and the General Assembly
passed a joint resolution in which it vacated that ruling and authorizing
the defendants to file an action for damages against the state in the
Superior Court. The defendants commenced such an action in 2012, but
the court dismissed it, finding that the claim was untimely and that the
joint resolution was an unconstitutional public emolument that violated
article first, § 1, of the Connecticut constitution insofar as it granted
the defendants a right that was unavailable to other individuals and
failed to identify any public purpose. In 2013, the defendants filed a
second claim with the commissioner, alleging, inter alia, that they were
harmed by the General Assembly's failure to articulate a public purpose
in the joint resolution and seeking to revive their 2007 claim. The commis-
sioner dismissed the defendants' second claim, as well. The defendants
subsequently returned to the General Assembly, which ultimately passed
No. 17-4, § 1, of the 2017 Special Acts (S.A. 17-4). Special Act 17-4
authorized the defendants to file a late claim for injuries "alleged to
have accrued on September 15, 2006," and expressly recognized that "a
public purpose [was] served by encouraging accountable state govern-
ment through the full adjudication of cases involving persons who claim
to have been injured by the conduct of state actors." Thereafter, the
state initiated the present action, seeking a judgment declaring that S.A.
17-4 constituted an unconstitutional public emolument that violated
article first, § 1, of the state constitution. The trial court granted the
state's motion for summary judgment and rendered judgment thereon,
concluding, inter alia, that the defendants had failed to demonstrate a
genuine issue of material fact as to whether S.A. 17-4 served a legitimate
public purpose. The Appellate Court affirmed the trial court's judgment,
and the defendants, on the granting of certification, appealed to this
court.

*Held* that S.A. 17-4 conferred an exclusive public emolument on the defen-
dants for which the state bore no responsibility and, accordingly, the
Appellate Court correctly determined that S.A. 17-4 violated article first,
§ 1, of the state constitution insofar as it served no public purpose:

A legislative enactment will withstand a challenge under article first,
§ 1, of the Connecticut constitution only if it serves a legitimate public
purpose, and, although a special act enacted pursuant to § 4-148 (b) will
undoubtedly confer a direct benefit on a particular claimant, a public
purpose may exist if the special act remedies an injustice to that individ-
ual for which the state itself bears responsibility because, in those circum-
stances, the benefit conferred on the private individual may be viewed
as incidental to the overarching public interest that is served in remedying
the injustice caused by the state.

Moreover, if the enactment seeks to remedy a procedural default for
which the state is not responsible, it does not serve a public purpose,
and, when a special act allows a person named therein to bring a lawsuit
based on a statutory cause of action that would otherwise have been
barred for failure to comply with a time limit specified in the statute,

this court ordinarily has been unable to discern any public purpose sufficient to sustain the enactment.

Although, in the present case, the defendants identified certain public purposes behind S.A. 17-4, such as ensuring a safe and healthy school setting for all children and holding government officials accountable, and S.A. 17-4 itself included express language identifying an ostensible public purpose, the legislature could not by mere fiat or finding make public a truly private purpose, and S.A. 17-4 did not excuse other similarly situated persons, such as other students in the same or different school districts, from complying with the applicable statutory limitations for claims or provide circumstances under which such persons could be excused from compliance therewith.

Furthermore, S.A. 17-4 sought to remedy only the defendants' procedural default insofar as it authorized them, and only them, to present their untimely claim against the state to the commissioner, and the defendants sought reimbursement from the state only for the private school tuition costs that they incurred without naming any other schoolchildren or without seeking any injunctive relief with respect to the conditions in the public school buildings.

In addition, although the defendants claimed that the state was ultimately responsible for the health complications of the defendant children caused by the poor conditions in the school buildings, the defendants did not contend that the state was responsible for the procedural lapses attendant to the untimely filing of their claim, there was nothing in the record that distinguished the facts of the present case from the ordinary case in which a litigant fails to take timely action, and S.A. 17-4 essentially eliminated for the defendants alone the consequences of their litigation choice of pursuing their claim against the state only through administrative and judicial proceedings, rather than by filing a claim with the commissioner in the first instance, without affording relief to anyone else.

Argued February 15—officially released August 22, 2023

*Procedural History*

Action for a judgment declaring unconstitutional a special act of the legislature that permitted the refiling of a certain claim by the defendants that previously had been dismissed, and for other relief, brought to the Superior Court in the judicial district of Hartford, where the defendants filed a counterclaim; thereafter, the court, *Hon. Robert B. Shapiro*, judge trial referee, granted the plaintiff's motions for summary judgment and to dismiss the defendants' counterclaim and rendered judgment thereon, from which the defendants appealed to the Appellate Court, *Bright, C. J.*, and *Cradle* and *DiPentima, Js.*, which affirmed the trial court's judgment, and the defendants, on the granting of certification, appealed to this court. *Affirmed.*

*Deborah G. Stevenson*, for the appellants (defendants).

*Michael K. Skold*, deputy solicitor general, with whom, on the brief, was *William Tong*, attorney general, for the appellee (plaintiff).

*Opinion*

ROBINSON, C. J. The sole issue in this certified appeal is whether No. 17-4, § 1, of the 2017 Special Acts (S.A. 17-4)[1] is an unconstitutional public emolument in violation of article first, § 1, of the Connecticut constitution.[2] The defendants, Joanne Avoletta, Peter Avoletta, and Matthew Avoletta, appeal, upon our grant of their petition for certification,[3] from the judgment of the Appellate Court affirming the trial court's judgment in favor of the plaintiff, the state of Connecticut. See *State* v. *Avoletta*, 212 Conn. App. 309, 312, 339, 275 A.3d 716 (2022). On appeal, the defendants claim that the Appellate Court incorrectly concluded that S.A. 17-4, pursuant to which the General Assembly extended the time limitation under General Statutes § 4-148[4] for the defendants to bring their claim against the state for injuries arising from poor indoor air quality at certain public schools, constitutes an unconstitutional public emolument because it does not serve a legitimate public purpose. We disagree with the defendants and, accordingly, affirm the judgment of the Appellate Court.

The record reveals the following facts and procedural history, much of which is aptly set forth in the opinion of the Appellate Court.[5] In May, 2007, "the defendants filed a claim with the [Claims] [C]ommissioner [commissioner], alleging that the state [had] failed to maintain the Torrington public schools in a safe and sanitary condition (2007 claim). Specifically, the defendants alleged that the middle and high school buildings contained water leaks, bacteria, mold, dampness, and poor indoor air quality, which caused and exacerbated Peter Avoletta's and Matthew Avoletta's respiratory diseases and conditions. As a result of the poor building conditions, Joanne Avoletta enrolled Peter Avoletta and Matthew Avoletta in private schools and filed a claim with the commissioner seeking reimbursement from the state for the tuition and costs of their private education. Because the defendants' claim was not timely filed within the one year statute of limitations set forth in . . . § 4-148 (a), the commissioner dismissed the claim for lack of subject matter jurisdiction." (Footnotes omitted.) *State* v. *Avoletta*, supra, 212 Conn. App. 313.

"The defendants subsequently sought legislative review of the commissioner's decision pursuant to § 4-148 (b). In response, the General Assembly passed Substitute House Joint Resolution No. 11-34[6] (joint resolution), which vacated the commissioner's ruling and authorized the defendants to file a damages claim against the state in the Superior Court. Pursuant to the joint resolution, the defendants commenced an action against the state [in May, 2012]. See *Avoletta* v. *State*, Docket No. HHD-CV-12-5036221-S, 2013 WL 2350751 (Conn. Super. May 6, 2013) . . . . The state subsequently filed a motion to dismiss. . . .

"The [trial] court, *Sheridan*, *J.*, granted the state's motion to dismiss on the ground that the joint resolution was an unconstitutional public emolument [that violated] article first, § 1, of the Connecticut constitution. . . . The court found that the defendants' claim was untimely, noting that the defendants 'were clearly aware of the school conditions far [longer] than [one] year before the . . . 2007 filing with the . . . commissioner.' . . . Accordingly, the court [concluded] that allowing the defendants 'to file suit directly in this matter, when [the trial court had] determined that their action was untimely provides them a right unavailable to other parties. [Although] the legislature need not enact a special act when vacating the . . . commissioner's dismissal of the matter, allowing a plaintiff with an untimely claim to circumvent § 4-148 (b) without any explanation or public purpose, constitutes a public emolument when the action is untimely.' " (Citations omitted; footnote in original.) *State* v. *Avoletta*, supra, 212 Conn. App. 313–14.

The defendants then appealed to the Appellate Court, which, in *Avoletta* v. *State*, 152 Conn. App. 177, 192–95, 98 A.3d 839, cert. denied, 314 Conn. 944, 102 A.3d 1116 (2014), "affirmed the judgment of the trial court, holding that the defendants' claim was time barred by the one year statute of limitations set forth in § 4-148 (a), and that the joint resolution had failed to identify any compelling equitable circumstances or a public purpose served by permitting the defendants to bring an untimely claim against the state. . . . Accordingly, [the Appellate Court] held that the joint resolution was an unconstitutional public emolument." (Citations omitted.) *State* v. *Avoletta*, supra, 212 Conn. App. 315.

In August, 2013, "the defendants filed a second claim with the commissioner . . . seeking relief on two distinct grounds. First, the defendants sought to revive their 2007 claim for damages stemming from unsafe conditions at the Torrington public schools (Torrington schools claim). Second, the defendants alleged that they were harmed by the legislature's 'gross negligence' in failing to articulate a public purpose in the joint resolution and neglecting to appropriately follow the statutory procedure to authorize such a claim . . . . The state moved to dismiss both claims, arguing that [they] were barred by res judicata, collateral estoppel, and legislative immunity. The commissioner granted the state's motion to dismiss [in May, 2015].

"Following the commissioner's order, the defendants again appealed to the General Assembly for legislative review. [In June, 2017], the General Assembly passed [S.A. 17-4], authorizing the defendants to proceed before the commissioner 'for injuries . . . alleged to have accrued on September 15, 2006 . . . .' The commissioner subsequently issued a scheduling order requiring that the parties engage in discovery, file dispositive motions, and

participate in a hearing on the merits of the defendants' claims.

"[In September, 2017], the state instituted the present action . . . [in] the Superior Court, seeking a [judgment declaring] that [S.A. 17-4] constituted an unconstitutional public emolument in violation of article first, § 1, of the Connecticut constitution. . . .

"[In May, 2018], the state filed a motion for summary judgment. In its accompanying memorandum of law, the state claimed that (1) [S.A. 17-4] constituted an unconstitutional public emolument, and (2) the defendants were collaterally estopped from arguing that their claims were timely or that there was a legitimate public purpose for permitting their untimely claims to proceed." (Footnotes omitted.) Id., 315–17.

In October, 2019, "the court, *Hon. Robert B. Shapiro*, judge trial referee, heard argument on the state's motion for summary judgment [which it subsequently granted] . . . . [The court concluded] that the issue of whether the Torrington schools claim was timely filed was barred by the doctrine of collateral estoppel. Because the claim previously was [found to be] untimely, the court clarified that the claim could . . . proceed [only] via special legislation passed pursuant to § 4-148 (b). The court then . . . determined that the defendants had failed to demonstrate a genuine issue of material fact [as to whether S.A. 17-4] served a legitimate public purpose . . . [or as to whether S.A. 17-4] constituted an unconstitutional public emolument." Id., 319.

The defendants subsequently appealed from the judgment of the trial court to the Appellate Court, claiming, inter alia, that the trial court improperly had granted the state's motion summary judgment on the ground that S.A. 17-4 was an unconstitutional public emolument. See id., 320, 325. Relying on this court's decisions in *Kelly* v. *University of Connecticut Health Center*, 290 Conn. 245, 963 A.2d 1 (2009), and *Kinney* v. *State*, 285 Conn. 700, 941 A.2d 907 (2008), the Appellate Court concluded that the trial court correctly had determined that S.A. 17-4 does not serve a legitimate public purpose and, therefore, is an unconstitutional public emolument. See *State* v. *Avoletta*, supra, 212 Conn. App. 325–28. This certified appeal followed. See footnote 3 of this opinion.

On appeal, the defendants claim that the Appellate Court incorrectly concluded that S.A. 17-4 does not serve a legitimate public purpose and is an unconstitutional public emolument under the public emoluments clause of the state constitution. See Conn. Const., art. I, § 1. The defendants argue that the Appellate Court failed to consider whether the state met its burden of proving, beyond a reasonable doubt, that the General Assembly's "sole objective" in enacting S.A. 17-4 was to grant a personal gain or advantage to the defendants.

(Internal quotation marks omitted.) The defendants contend that "the legislature had multiple, valid public policy purposes in adopting" S.A. 17-4, namely, providing compensation for the defendants, ensuring a safe and healthy school setting for all children, holding government officials accountable, and ensuring that similar claims receive a full adjudication on the merits.

In response, the state argues that a special act that purports to authorize a party to present an untimely claim to the commissioner will have a legitimate public purpose only when the state bears responsibility for the untimely filing. Because no state actor caused the defendants' procedural default, the state contends that the public purposes identified by the language of S.A. 17-4 and the defendants are not legitimate public purposes and, therefore, that S.A. 17-4 provides an exclusive, private benefit to the defendants that no other similarly situated litigant may enjoy, in violation of the public emoluments clause. We agree with the state and, accordingly, conclude that S.A. 17-4 is an unconstitutional public emolument.

We first address the applicable standard of review and governing legal principles. "It is well established that the state cannot be sued without its consent. . . . This doctrine of sovereign immunity implicates subject matter jurisdiction and is therefore a basis for granting a motion to dismiss. . . . A determination regarding a trial court's subject matter jurisdiction is a question of law. When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Citations omitted; internal quotation marks omitted.) *Kelly* v. *University of Connecticut Health Center*, supra, 290 Conn. 252. "Moreover, [t]his court has long held that every presumption will be made in favor of the constitutionality of a legislative act. . . . Parties challenging the constitutionality of an act in a proceeding seeking declaratory relief have the [heavy] burden of showing its invalidity beyond a reasonable doubt." (Internal quotation marks omitted.) Id., 257. "Although [w]e have taken a broad view of the legislative goals that may constitute a public purpose . . . [b]ecause the elements of a public purpose vary as much as the circumstance in which the term is appropriate, each case must be determined on its own peculiar facts." (Citation omitted; internal quotation marks omitted.) *Chotkowski* v. *State*, 240 Conn. 246, 259–60, 690 A.2d 368 (1997).

It is well established that, "[t]o prevail under article first, § 1, of our constitution, the state must demonstrate that the sole objective of the General Assembly is to grant personal gain or advantage to an individual. . . . If, however, an enactment serves a legitimate *public* purpose, then it will withstand a challenge under article

first, § 1. . . . The scope of our review as to whether an enactment serves a public purpose is limited. [W]hat constitutes a public purpose is primarily a question for the legislature, and its determination should not be reversed by the court unless it is manifestly and palpably incorrect. . . . In determining whether a special act serves a public purpose, a court must uphold it unless there is no reasonable ground [on] which it can be sustained. . . . Thus, if there [is] the least possibility that [the special act] will be promotive in any degree of the public welfare . . . we are bound to uphold it against a constitutional challenge predicated on article first, § 1 [of the state constitution]. . . .

"In this regard, although a special act passed under § 4-148 (b) will undoubtedly confer a direct benefit [on] a particular claimant, we have found a public purpose if it remedies an injustice done to that individual *for which the state itself bears responsibility*. . . . In such circumstances, the benefit conferred [on] a private party by the legislature may be viewed as incidental to the overarching public interest that is served in remedying an injustice caused by the state. . . .

"By contrast, we have consistently held that legislation seeking to remedy a procedural default for which the state is not responsible does not serve a public purpose and, accordingly, runs afoul of article first, § 1, of the state constitution. . . . Thus, legislation cannot survive a constitutional challenge under article first, § 1, if it excuses a party's failure to comply with a statutory notice requirement simply because the noncompliance precludes consideration of the merits of the party's claim. . . . Similarly, [when] a special act has allowed a person named therein to bring a suit based [on] a statutory cause of action that would otherwise be barred for failure to comply with a time limit specified in the statute, we have ordinarily been unable to discern any public purpose sufficient to sustain the enactment." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Kelly* v. *University of Connecticut Health Center*, supra, 290 Conn. 257–59.

Our conclusion in the present case is guided by our decisions in *Kinney* v. *State*, supra, 285 Conn. 713, and *Kelly* v. *University of Connecticut Health Center*, supra, 290 Conn. 259, in which we concluded that the respective special acts at issue were unconstitutional public emoluments because they served no public purpose.[7] In *Kinney*, this court held that No. 94-13, § 1, of the 1994 Special Acts (S.A. 94-13),[8] which authorized the plaintiff, Joan A. Kinney, as administratrix of the estate of her husband, who was a Superior Court judge, to present her claim against the state to the commissioner despite her untimely filing, conferred an unconstitutional public emolument on Kinney. See *Kinney* v. *State*, supra, 716; see also id., 704–706. In so concluding, the court rejected Kinney's argument that S.A. 94-13

served a public purpose "by encouraging a work ethic of a judge, indeed, any employee of the [s]tate of Connecticut." (Internal quotation marks omitted.) Id., 708. Rather, we concluded that, "although well intentioned, S.A. 94-13 [benefited] no member of the public other than [Kinney] and remedie[d] a procedural default arising from [Kinney's] failure to [timely] file a claim with the . . . commissioner . . . for which the state itself bore no responsibility." (Citation omitted; internal quotation marks omitted.) Id., 708–709.

Subsequently, in *Kelly* v. *University of Connecticut Health Center*, supra, 290 Conn. 245, this court held that No. 05-4, § 1, of the 2005 Special Acts (S.A. 05-4),[9] which specifically authorized "the plaintiff, and only the plaintiff," to present his claim against the state to the commissioner despite his untimely filing, was an unconstitutional public emolument because it served no public purpose. Id., 259. The court in *Kelly* disagreed with the plaintiff's argument that, by lengthening the limitation period within which a medical malpractice claim [could] be filed against a state hospital, S.A. 05-4 served the public purpose of remedying the injustice created by the establishment of different statutes of limitations for state and private hospitals. Id., 256. The court's review of the legislative history of S.A. 05-4 demonstrated that it was enacted to benefit only the plaintiff. Id., 259. Relying on the then recent decision in *Kinney*, the court recognized that "a mere declaration within a particular special act that it serves the public interest is not enough" to overcome the emolument analysis; id., 259–60; and that "[t]he fact that the legislature stated that the special act served a public purpose does not change the pertinent inquiry for the court." (Internal quotation marks omitted.) Id., 260.

Guided by *Kinney* and *Kelly*, we now consider whether S.A. 17-4 serves a legitimate public purpose, which would save it from unconstitutionality as a public emolument. We also are mindful that a "legislative enactment need not contain a specific statement of the public purpose sought to be achieved by it. . . . Legislative findings, however, purporting to establish the existence of a public purpose should be considered when the text of the act itself incorporates these findings . . . ." (Citation omitted; internal quotation marks omitted.) *Wilson* v. *Connecticut Product Development Corp.*, 167 Conn. 111, 116 n.2, 355 A.2d 72 (1974). In enacting S.A. 17-4, the General Assembly expressly found that "there is a public purpose served by encouraging accountable state government through the full adjudication of cases involving persons who claim to have been injured by the conduct of state actors." S.A. 17-4, § 1. To the extent that S.A. 17-4, § 1, is ambiguous with respect to the meaning of the phrase "encouraging accountable state government," or as to whether it benefits only the defendants, we are guided by our previous decisions considering the legislative history of special

acts for purposes of the emolument analysis, as well as General Statutes § 1-2z. See, e.g., *Kelly* v. *University of Connecticut Health Center*, supra, 290 Conn. 259; *Kinney* v. *State*, supra, 285 Conn. 713–14 and n.10.

The defendants contend that the General Assembly "had multiple, valid public policy purposes" for adopting S.A. 17-4, such as furnishing them compensation for their injuries, ensuring a safe and healthy school setting for all children, holding government officials accountable, and providing a full adjudication on the merits for similar claims. Indeed, the defendants contended that S.A. 17-4 was consistent with these public policy goals in their advocacy to the attorney general and before the Judiciary Committee of the General Assembly. Senator John A. Kissel acknowledged that the information that the defendants' counsel had "put on the public record [would] help [the legislature] craft something that hopefully [could] withstand the emolument analysis . . . " Conn. Joint Standing Committee Hearings, Judiciary, Pt. 2, 2017 Sess., p. 1041. Representative Bruce V. Morris acknowledged that "this is an issue—maybe not just in [Torrington] and [other districts] where we do have kids at our moldy buildings or whatever, and districts do not act soon enough . . . and something needs to be done to remedy that." Id., p. 1055; cf. *Kelly* v. *University of Connecticut Health Center*, supra, 290 Conn. 259 (legislative history of S.A. 05-4 revealed that those in favor of passing act believed that " 'what [they were] doing . . . [was] changing the rules for one individual in a specific act' "); *Kinney* v. *State*, supra, 285 Conn. 713 (legislative history of S.A. 94-13 failed to support plaintiff's contention that that special act "was based on the public purpose of encouraging a work ethic by sending a message 'to all government employees . . . to work above and beyond the norm' ").

Despite these remarks, the "legislature cannot by mere fiat or finding, make public a truly private purpose . . . . Its findings and statements about what is or is not public cannot be binding [on] the court." (Internal quotation marks omitted.) *Kinney* v. *State*, supra, 285 Conn. 712. Although the language of the special act in *Kinney* expressly declared that the authorization "would serve a public purpose by not penalizing a person who exhausts his or her administrative and judicial remedies before filing a claim against the state"; S.A. 94-13, § 1; see footnote 8 of this opinion; we nevertheless were "hard pressed to conclude that there [was] a legitimate public purpose when the beneficial effect of the special act applie[d] to *no member of the public other than* [*Kinney*] for whom it grant[ed] a personal privilege." (Emphasis added.) *Kinney* v. *State*, supra, 714. Likewise, S.A. 17-4 neither excuses other similarly situated persons—such as other Torrington public school students or students in other school districts—from complying with the statutory limitations nor provides

circumstances under which such persons may be excused. See id.

In the present case, S.A. 17-4 seeks only to remedy the defendants' procedural default, namely, their untimely filing with the commissioner of their claim against the state. See footnote 1 of this opinion. Entitled "An Act Concerning the Claims Against the State of Joanne Avoletta, Peter Avoletta and Matthew Avoletta," S.A. 17-4 authorizes the defendants, and only the defendants, "who initially filed notice of their claims against the state . . . on May 2, 2007, for injuries that are alleged to have accrued on September 15, 2006," to present their respective claims for money damages against the state to the commissioner. S.A. 17-4, § 1; see *Kelly* v. *University of Connecticut Health Center*, supra, 290 Conn. 259. Although the defendants claim that they are seeking justice not only for themselves, but also for other similarly situated school children, they seek reimbursement from the state for the tuition costs of their private education, no other children were named in the underlying action against the state, and no injunctive relief was sought with respect to the conditions of the public school buildings. It is well established that, when "a special act has allowed a person named therein to bring a suit based [on] a statutory cause of action that would otherwise be barred for failure to comply with a time limit specified in the statute, we have ordinarily been unable to discern any public purpose sufficient to sustain the enactment." (Internal quotation marks omitted.) *Kinney* v. *State*, supra, 285 Conn. 713; see *Merly* v. *State*, 211 Conn. 199, 213, 558 A.2d 977 (1989).

Furthermore, "we consistently have determined that legislation seeking to remedy a procedural default for which the state is not responsible does not serve a public purpose and, accordingly, runs afoul of article first, § 1, of the state constitution." *Kinney* v. *State*, supra, 285 Conn. 715–16 n.11. Although the defendants argue that the state is ultimately responsible for the health complications caused by the poor school building conditions, they do *not* contend in their brief that the state is responsible for the procedural lapses attendant to the untimely filing of their claim as a factual matter.[10] See *Kelly* v. *University of Connecticut Health Center*, supra, 290 Conn. 258–59 ("legislation cannot survive a constitutional challenge . . . if it excuses a party's failure to comply with a statutory notice requirement simply because the noncompliance precludes consideration of the merits of the party's claim" (internal quotation marks omitted)). As in *Kinney*, "nothing in the record of the present case distinguishes its facts from the ordinary case in which a litigant fails to take timely action. Rather than filing a claim with the . . . commissioner as [their] first course of action or concurrently with [their] pursuit of administrative and judicial remedies, the [defendants] chose to pursue [their] claim against the state only through administrative and judi-

cial proceedings. [S.A. 17-4] essentially would eliminate for [them] alone the consequences of [their] litigation choice and would provide no relief to anyone else who either made a similar erroneous litigation choice or who mistakenly believed that exhaustion of administrative and judicial remedies was required before filing a claim with the . . . commissioner." *Kinney* v. *State*, supra, 715; cf. *Merly* v. *State*, supra, 211 Conn. 213–15 (special act did not serve public purpose because it benefited only plaintiff, and he could not explain how *state employee caused his untimely claim*). But see *Chotkowski* v. *State*, supra, 240 Conn. 261 (special act was not exclusive public emolument because legislature expressly found that plaintiff had failed to file timely claim as result of being *misinformed and misled by state official*); *Sanger* v. *Bridgeport*, 124 Conn. 183, 185, 198 A. 746 (1938) (plaintiff alleged that statutorily defective notice "was *prepared by an assistant to the city clerk* . . . [on] whom the plaintiff relied for its preparation and to whom was given all essential facts [that] were necessary for" sufficient notice (emphasis added)).

Accordingly, because "we see no basis for sustaining the validity of a special act creating a privilege for a particular individual"; *Kinney* v. *State*, supra, 285 Conn. 713; and because it is clear that S.A. 17-4 confers an exclusive public emolument on the defendants for which the state bears no responsibility, we conclude that the Appellate Court correctly determined that S.A. 17-4 violates article first, §1, of the state constitution insofar as it serves no public purpose. The Appellate Court, therefore, properly upheld the trial court's granting of summary judgment in favor of the state.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

[1] No. 17-4, § 1, of the 2017 Special Acts provides: "(a) Notwithstanding the failure to file a proper notice of a claim against the state with the clerk of the Office of the Claims Commissioner, within the time limitations specified by subsection (a) of section 4-148 of the general statutes, Joanne Avoletta, Peter Avoletta and Matthew Avoletta are authorized pursuant to the provisions of subsection (b) of section 4-148 of the general statutes to present their respective claims against the state to the Claims Commissioner. The General Assembly finds that there is a public purpose served by encouraging accountable state government through the full adjudication of cases involving persons who claim to have been injured by the conduct of state actors. The General Assembly further finds it just and equitable that the time limitations provided for in subsection (a) of section 4-148 of the general statutes be tolled in a case such as this, involving claimants who initially filed notice of their claims against the state with the Claims Commissioner on May 2, 2007, for injuries that are alleged to have accrued on September 15, 2006, which allegations, if viewed in a light most favorable to the claimants, provide notice to the state of their claims within the statute of limitations for injuries to their person. The General Assembly deems such authorization to be just and equitable and finds that such authorization is supported by compelling equitable circumstances and would serve a public purpose. Such claims shall be presented to the Claims Commissioner not later than one year after the effective date of this section.

"(b) The state shall be barred from setting up the failure to comply with the provisions of sections 4-147 and 4-148 of the general statutes, from denying that notice of the claims was properly and timely given pursuant

to sections 4-147 and 4-148 of the general statutes and from setting up the fact that the claims had previously been considered by the Claims Commissioner, by the General Assembly or in a judicial proceeding as defenses to such claims."

[2] Article first, § 1, of the constitution of Connecticut provides: "All men when they form a social compact, are equal in rights; and no man or set of men are entitled to exclusive public emoluments or privileges from the community."

[3] We granted the defendants' petition for certification to appeal from the judgment of the Appellate Court, limited to the following issue: "Did the Appellate Court correctly determine that [S.A. 17-4] is an unconstitutional public emolument?" *State* v. *Avoletta*, 343 Conn. 931, 276 A.3d 433 (2022).

[4] General Statutes § 4-148 provides: "(a) Except as provided in subsection (b) of this section and section 4-165b, no claim shall be presented under this chapter but within one year after it accrues. Claims for injury to person or damage to property shall be deemed to accrue on the date when the damage or injury is sustained or discovered or in the exercise of reasonable care should have been discovered, provided no claim shall be presented more than three years from the date of the act or event complained of.

"(b) The General Assembly may, by special act, authorize a person to present a claim to the Office of the Claims Commissioner after the time limitations set forth in subsection (a) of this section have expired if it deems such authorization to be just and equitable and makes an express finding that such authorization is supported by compelling equitable circumstances and would serve a public purpose. Such finding shall not be subject to review by the Superior Court.

"(c) No claim cognizable by the Office of the Claims Commissioner shall be presented against the state except under the provisions of this chapter. Except as provided in section 4-156, no claim once considered by the Office of the Claims Commissioner, by the General Assembly or in a judicial proceeding shall again be presented against the state in any manner."

[5] For the sake of brevity, we mention only the facts and procedural history relevant to the certified issue in this appeal. For a full recitation of the facts and procedural history of this case, see *State* v. *Avoletta*, supra, 212 Conn. App. 313–20.

[6] "Substitute House Joint Resolution No. 11-34, § 2, provides in relevant part that 'the decision of the . . . [c]ommissioner . . . ordering the dismissal of the claims against the state in excess of seven thousand five hundred dollars of [the defendants], is vacated and the [defendants] are authorized to institute and prosecute to final judgment an action against the state to recover damages as compensation for injury to person or damage to property, or both, allegedly suffered by the claimants as set forth in said claims.' " *State* v. *Avoletta*, supra, 212 Conn. App. 314 n.5.

[7] We are unpersuaded by the defendants' repeated assertions that the Appellate Court "ignored" and "disregard[ed]" relevant legal precedent in concluding that S.A. 17-4 is an unconstitutional public emolument. Although the defendants contend that the Appellate Court "failed" to analyze or apply numerous "highly relevant and controlling" decisions of this court, the Appellate Court properly analyzed and applied *Kinney* v. *State*, supra, 285 Conn. 700, and *Kelly* v. *University of Connecticut Health Center*, supra, 290 Conn. 245, which encompass the current state of our public emolument jurisprudence, to the present case. Many of the decisions cited by the defendants are not relevant because they do not address the constitutionality of public emoluments enacted to cure a litigant's procedural default. See, e.g., *Honulik* v. *Greenwich*, 293 Conn. 641, 643–46, 980 A.2d 845 (2009) (whether participation in appeal by Connecticut Supreme Court justice who had reached constitutionally mandated age of retirement affected court's subject matter jurisdiction); *Serrano* v. *Aetna Ins. Co.*, 233 Conn. 437, 447, 664 A.2d 279 (1995) (whether legislative enactment ran afoul of contract clause of United States constitution); *State* v. *Ross*, 230 Conn. 183, 187, 646 A.2d 1318 (1994) (consolidated criminal appeals from imposition of death penalty on defendant), cert. denied, 513 U.S. 1165, 115 S. Ct. 1133, 130 L. Ed. 2d 1095 (1995); *State* v. *Indrisano*, 228 Conn. 795, 796–97, 640 A.2d 986 (1994) (facial vagueness claim under fourteenth amendment to United States constitution); *State* v. *Floyd*, 217 Conn. 73, 74–75, 89–90, 584 A.2d 1157 (1991) (fourth amendment and fourteenth amendment due process clause claims and constitutional avoidance); *Adams* v. *Rubinow*, 157 Conn. 150, 169–80, 251 A.2d 49 (1968) (numerous constitutional challenges but not under public emoluments clause); *Snyder* v. *Newtown*, 147 Conn. 374, 381, 161 A.2d 770 (1960) (discrimination claim for use of public funds for private purpose), appeal

dismissed, 365 U.S. 299, 81 S. Ct. 692, 5 L. Ed. 2d 688 (1961).

[8] No. 94-13, § 1, of the 1994 Special Acts provides in relevant part: "(a) Notwithstanding the failure to file a proper notice of a claim against the state with the clerk of the office of the claims commissioner . . . within the time limitations specified by subsection (a) of section 4-148 of the general statutes . . . Joan A. Kinney is authorized pursuant to the provisions of subsection (b) of said section 4-148 to present her claim against the state to the claims commissioner . . . .

"(b) The general assembly finds . . . [that] it would be just and equitable to authorize Joan A. Kinney to present her claim against the state to the claims commissioner, that there are compelling equitable circumstances to support such authorization and that such authorization would serve a public purpose by not penalizing a person who exhausts his or her administrative and judicial remedies before filing a claim against the state with the claims commissioner. . . ."

[9] No. 05-4, § 1, of the 2005 Special Acts provides in relevant part: "(a) Notwithstanding the failure to file a proper notice of a claim against the state with the clerk of the Office of the Claims Commissioner . . . within the time limitations specified by subsection (a) of section 4-148 of the general statutes . . . Robert J. Kelly is authorized . . . to present his claim against the state to the Claims Commissioner. The General Assembly deems such authorization to be just and equitable and finds that such authorization is supported by compelling equitable circumstances and would serve a public purpose. . . ."

[10] The trial court rejected the defendants' argument, which they renewed at oral argument before this court, that the state was responsible for their untimely filing because they detrimentally relied on promises made by the attorney general relating to the conditions of the school and appropriate corrective action, stating that "the attorney general's statements . . . [did] not justify the defendants' decision to wait years to file a claim to recover damages . . . . Rather, these statements should have indicated to the defendants that they may have had a cause of action, at that time, for negligence." (Footnote omitted.) To the extent that the defendants challenge the correctness of this finding, we consider this claim to be inadequately briefed for failure to provide any meaningful analysis, and we therefore decline to address it. See, e.g., *Burton* v. *Dept. of Environmental Protection*, 337 Conn. 781, 804–805, 256 A.3d 655 (2021) (courts do not reach inadequately briefed claims); see also, e.g., id., 797 n.12 (courts do not reach claims raised for first time at oral argument).